**Michael T. MINOTTI, Appellant,**

**v.**

**Brian LENSINK, in his official capacity as Commissioner of the Connecticut State Department of Mental Retardation; Gareth Thorne, individually and in his official capacity as Commissioner of Mental Retardation (former); Roger MacNamara, individually and in his official capacity as Superintendent of Mansfield Training School, Connecticut State Department of Mental Retardation (former); Arlene Mirsky, individually and in her official capacity as Assistant Superintendent, Mansfield Training School; Manuel Jainchill, individually and in his official capacity as Personnel Director of Mansfield Training School; Delmar Pelletier, individually and in his official capacity as Institutional Unit Manager of Bennet Hall, Mansfield Training School; Lee–Ann Piche, individually and in her**

---

official capacity as Unit Coordinator, Bennet Hall, Mansfield Training School, Appellees.

No. 365, Docket 89–7619.

United States Court of Appeals, Second Circuit.

Argued Dec. 18, 1989.

Decided Feb. 2, 1990.

Michael T. Minotti, pro se.

Henri Alexandre, Asst. Atty. Gen. (Clarine Nardi Riddle, Acting Atty. Gen., of Connecticut, of counsel), for appellees.

Before OAKES, Chief Judge, PRATT, Circuit Judge, and SAND, District Judge.[*]

PER CURIAM:

Michael T. Minotti, pro se, appeals a May 19, 1989, judgment of the United States District Court for the District of Connecticut, T. Emmet Clarie, Judge, dismissing with prejudice his action brought under the federal civil rights laws, 42 U.S.C. §§ 1983, 1985, 1986 (1982), and the False Claims Act, 31 U.S.C. §§ 3729–31 (1982 & Supp. V 1987), on grounds that Minotti failed to

---

[*] Of the United States District Court for the Southern District of New York, sitting by designation.

comply adequately with discovery orders. We find that the district court did not abuse its discretion in ordering dismissal of the action as a sanction for non-compliance, and that court-ordered dismissal, as opposed to voluntary dismissal, of a *qui tam* action brought under the False Claims Act does not require prior consent of the Attorney General of the United States. Accordingly, we affirm the judgment below.

## FACTS

From August 1983 until December 14, 1983, Minotti was employed by the Mansfield Training School, an intermediate care facility for the mentally retarded operated and administered by defendant employees and officers of the Connecticut State Department of Mental Retardation. Alleging that he was terminated from employment for not participating in defendants' conspiracy to defraud the United States by means of false claims for federal funding under Title XIX of the Social Security Act, Minotti brought suit on September 30, 1986, under the federal civil rights laws and the False Claims Act. Pursuant to the statutory requirements for bringing a private civil action under the False Claims Act, *see* 31 U.S.C. § 3730(b) (Supp. V 1987), Minotti provided the United States Department of Justice with a written summary of all material evidence he possessed supporting his allegations. The Department of Justice declined to enter an appearance or to proceed with the action. Minotti accordingly conducted the action himself.

On April 9, 1987, and May 14, 1987, defendants served on Minotti interrogatories and requests for production which sought, among other things, Minotti's recent tax returns, documents pertaining to his past employment and to workers' compensation payments he was receiving, and his educational and medical histories. Nearly one year later, the district court overruled Minotti's objections to these production requests and ordered him to supply the requested documents by April 23, 1988. Minotti did not comply with the district court's order.

On May 31, 1988, defendants filed a motion to dismiss, citing Minotti's failure to heed the court-ordered discovery deadline. On June 15, 1988, Minotti filed objections to this motion and sought additional time to comply with the discovery requests. The court reserved ruling on defendants' motion and extended the discovery deadline to July 1, 1988. Once again, Minotti failed to meet the deadline or to respond in any fashion.

At a hearing held January 23, 1989, on defendants' motion to dismiss, Minotti informed the court that he had filed documents fully satisfying the discovery requests. The court found, however, that Minotti had failed to answer any of the outstanding discovery requests. Faced with Minotti's continued noncompliance with its orders, the district court on January 26, 1989, ordered Minotti to comply with all outstanding discovery requests by February 9, 1989, or to face dismissal with prejudice. In Notices of Compliance filed February 12, February 13, and May 1, 1989, Minotti again claimed he had complied fully with the court's discovery order. In each situation, however, the court found that Minotti had ignored requests for tax documents and other materials. On May 19, 1989, the district court entered judgment dismissing Minotti's action.

## DISCUSSION

1. *Dismissal as Sanction for Noncompliance with Discovery*

■ On appeal, Minotti argues, first, that dismissal of his action was too extreme a sanction for his failure to comply fully with defendants' discovery requests. However, Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure authorizes a court to dismiss an action "[i]f a party ... fails to obey an order to provide or permit discovery." Moreover, a district court has broad power to impose Rule 37(b) sanctions in response to abusive litigation practices. *See Penthouse Int'l, Ltd. v. Playboy Enters.,* 663 F.2d 371, 386–87 (2d Cir.1981). It is well settled that a reviewing court will overturn a district court's application of such sanctions only where there has been

an abuse of discretion. *See Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 71 (2d Cir.1988); *Paine, Webber, Jackson & Curtis, Inc. v. Inmobiliaria Melia de Puerto Rico, Inc.*, 543 F.2d 3, 6 (2d Cir.1976), *cert. denied*, 430 U.S. 907, 97 S.Ct. 1178, 51 L.Ed.2d 583 (1977).

In the present case, Minotti failed to heed discovery orders on at least four separate occasions, thus delaying the case nearly two years. Moreover, the district court explored numerous options before ordering dismissal, such as repeatedly allowing Minotti additional time to comply with the discovery orders, informing Minotti of the actions he must take in order to comply with the orders, and warning Minotti about the threat of dismissal. Although dismissal of an action or proceeding is the most severe of appropriate sanctions for noncompliance with discovery orders, *see National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) (per curiam), "the requisite 'element of willfulness or conscious disregard' for the discovery process ... justifies the sanction of dismissal." *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1458 (D.C.Cir.1986) (citations omitted), *cert. denied*, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987). Because "all litigants, including pro ses, have an obligation to comply with court orders," *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir.1988), we find that the district court acted well within its discretion in dismissing Minotti's action.

2. *Dismissal of Claims under the False Claims Act*

■ Minotti nevertheless argues that dismissal of his claims under the False Claims Act was inappropriate. Citing the portion of the statute which allows dismissal of a civil action brought by a private person "only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting," 31 U.S.C. § 3730(b)(1) (Supp. V 1987), Minotti argues that the court's failure to obtain the prior consent of the Attorney General rendered his dismissal inappropriate.

Although no previous court has interpreted this particular consent provision, we find that it applies only in cases where a plaintiff seeks voluntary dismissal of a claim or action brought under the False Claims Act, and not where the court orders dismissal. Before 1981, the provision stated that a private citizen suit under the False Claims Act "shall not be *withdrawn or discontinued* without the consent, in writing, of the judge of the court and the United States attorney ... setting forth their reasons for such consent." 31 U.S.C. § 232(B) (1976) (emphasis added). As such, the provision clearly applied only to cases in which a plaintiff, purportedly representing the interests of the United States, sought to withdraw an action before the United States had opportunity to assess its merits or intervene in its conduct. *See United States ex rel. Laughlin v. Eicher*, 56 F.Supp. 972, 973 (D.D.C.1944) (holding that section 232(B), predecessor of current provision, "refers only to voluntary dismissals").

When Congress amended the False Claims Act in 1981 to recodify the statute and to update its language to reflect modern usage, *see* H.R.Rep. No. 651, 97th Cong., 2d Sess. 1–4, *reprinted in* 1982 U.S. Code Cong. & Admin.News 1895–98, the phrase "withdrawn or discontinued" became transformed to "dismissed." While noting that "withdrawn or" was omitted as "surplus" verbiage, *see* 31 U.S.C. § 3730, Historical and Revision Notes (1982), legislators did not explain how "discontinued" turned into "dismissed" in the final version of the amendment. Given the legislative silence concerning this transformation of language and Congress's expressed intention not to allow changes in terminology to alter the substance of the statutory provisions, *see* H.R.Rep. No. 651, *supra*, at 3, 1982 U.S.Code Cong. & Admin.News 1897, we hold that the provision requiring consent of the Attorney General prior to dismissal of a private action, as it reads today, continues to apply only where the plaintiff seeks voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure

41(a), and not where the court orders dismissal.[1]

 Furthermore, we note that requiring the Attorney General's consent before dismissal is particularly inappropriate in this case, in light of the decision of the Attorney General, acting through a United States Attorney, to decline intervening or proceeding with Minotti's claims on behalf of the Government. It is clearly established that although *qui tam* actions allow individual citizens to initiate enforcement against wrongdoers who cause injury to the public at large, the Government remains the real party in interest in any such action. *See generally* Caminker, *The Constitutionality of* Qui Tam *Actions*, 99 Yale L.J. 341, 350–54 (1989). Integral to the *qui tam* enforcement scheme, therefore, is the option retained by the United States to act on its own behalf by intervening in or conducting an action brought by a private person. Under this conception of *qui tam* enforcement, the consent provision ensures that legitimate claims against an alleged wrongdoer are not dismissed before the United States has been notified of the claims or has had opportunity to proceed with the action. Once the United States formally has declined to intervene in an action (as it has in this case), however, little rationale remains for requiring consent of the Attorney General before an action may be dismissed. Rather, the Attorney General's refusal "to enter the suit may be taken as tantamount to the consent of the District Attorney to dismiss the suit." *United States ex rel. Laughlin v. Eicher*, 56 F.Supp. 972, 973 (D.D.C.1944). Accordingly, the district court did not err in dismissing Minotti's claims under the False Claims Act without obtaining the consent of the Attorney General.

Judgment affirmed.

---

**1.** If the consent provision were intended to apply even to court-ordered dismissals, its language requiring permission of the court, as well as of the Attorney General, before dismissal of a private action would make little sense.