967 F.2d 1391
 61 USLW 2048, 23 Fed.R.Serv.3d 56,
38 Cont.Cas.Fed. (CCH) P 76,352
 UNITED STATES of America, ex rel., Thomas McGOUGH, and
William Toth, in their own behalf, Plaintiff-Appellant,
v.
COVINGTON TECHNOLOGIES COMPANY, d/b/a Covington
Constructors; S.L.S. Construction Company, d/b/a
Pacific Construction Company, and
Industrial Indemnity,
Defendants-Appellees.
 No. 91-55306.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 8, 1992.
Decided June 24, 1992.
 
 Russell B. Kinner, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.
 Michael T. Lowe, Costa Mesa, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: PREGERSON, D.W. NELSON and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 OVERVIEW
 
 1
 This action was brought by individuals acting as qui tam plaintiffs on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733. The government initially declined to take over the action, as authorized by 31 U.S.C. § 3730(b)(2)-(4).
 
 
 2
 During the trial and despite the government's objection, the district court approved a stipulation between the qui tam plaintiffs and Industrial Indemnity, the insurer of defendant S.L.S. Construction Company, and dismissed the action with prejudice as to Industrial Indemnity. After final judgment was entered against the remaining defendant, the government moved to intervene for the purpose of appealing Industrial Indemnity's dismissal. That motion was denied.
 
 
 3
 The government appeals the denial of its motion to intervene. On the merits of its appeal, the government challenges the district court's dismissal of its claims against Industrial Indemnity with prejudice. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand this case to the district court for further proceedings.
 
 
 4
 * FACTS
 
 
 5
 The False Claims Act creates a dual enforcement scheme. Both private persons and the government may bring suit for violation of 31 U.S.C. § 3729. Such private persons, referred to as "qui tam plaintiffs," may initiate the suit and share in a resulting recovery. 31 U.S.C. § 3730(b)(1).
 
 
 6
 When an action is brought by qui tam plaintiffs, the government has the option, within 60 days after receipt of the complaint, to proceed with the action. 31 U.S.C. § 3730(b)(2). If the government decides not to proceed with the action, the qui tam plaintiffs who filed the action may proceed with it. 31 U.S.C. § 3730(b)(4)(B). Should the government later decide to proceed with the action, the court may allow it to intervene upon a showing of good cause. 31 U.S.C. § 3730(c)(3).
 
 
 7
 Here, the qui tam plaintiffs are former employees of S.L.S. Construction Company, dba Pacific Construction Company (SLS), and Covington Constructors, a subsidiary of Covington Technologies. This action, designated Sylvester II,[1] arose from a bid that SLS (a small business) had submitted on a small business set-aside contract for construction of unaccompanied enlisted personnel housing (UEPH contract) at Camp Pendleton, California. The complaint alleged that SLS and Covington (a large business) had made false claims regarding their contractual relationship. The complaint further alleged that based on the terms of their contractual relationship, SLS and Covington would have been ineligible to bid on the UEPH contract.
 
 
 8
 Industrial Indemnity, as surety for SLS, issued the necessary performance and payment bonds for the project. The complaint alleged that Industrial Indemnity knew about the relationship between SLS and Covington, but failed to disclose this information to the Department of the Navy or the government.
 
 
 9
 The complaint in Sylvester II was kept under seal until May 26, 1987, when the government initially declined to proceed with the action. 31 U.S.C. § 3730(b)(2).
 
 
 10
 The qui tam plaintiffs filed a second qui tam action against the same defendants (Sylvester III ). In that action, they alleged similar false statements in violation of 31 U.S.C. § 3729 relating to nine other contracts that SLS and Covington had previously teamed on. Sylvester III was unsealed on December 12, 1989, after the government elected to intervene and proceed with that action. 31 U.S.C. § 3730(b)(2).
 
 
 11
 Pursuant to the Central District of California's Local Rule 4.3.1, both parties filed a notice in Sylvester III that Sylvester II was a related case. In February 1990, the government moved to consolidate Sylvester II and Sylvester III, in accordance with Fed.R.Civ.P. 42(a). The district court denied this motion.
 
 
 12
 Sylvester II went to trial in July 1990. During the trial, the qui tam plaintiffs and Industrial Indemnity agreed to a stipulation dismissing the claims against Industrial Indemnity, with prejudice. On July 9, 1990, the district court approved the stipulation "that Plaintiffs will dismiss their action with prejudice against Defendant Industrial Indemnity."
 
 
 13
 The government asserts it did not learn of Industrial Indemnity's dismissal until July 30, 1990, and that it was unaware of the settlement negotiations between the qui tam plaintiffs and Industrial Indemnity. Industrial Indemnity disputes this. It asserts that the attorney for the qui tam plaintiffs assured Industrial Indemnity's trial counsel that the government was aware of the settlement negotiations and the government's consent to the dismissal was "not a problem." Industrial Indemnity acknowledges it made no inquiry of the government.
 
 
 14
 On August 2, 1990, three days after learning that the action had been dismissed with prejudice as to Industrial Indemnity, the government filed its objection to the dismissal: "[T]he Attorney General objects to dismissing that claim with prejudice, but consent will be given to dismissing that claim without prejudice to the government pursuing that claim." On September 24, 1990, the district court granted Industrial Indemnity's motion to confirm its dismissal with prejudice, effectively overruling the government's objection.
 
 
 15
 At the conclusion of the trial in Sylvester II, judgment was entered on December 4, 1990 against the sole remaining defendant, Covington Technologies. On December 27, 1990 the government moved to intervene as a matter of right for the purpose of appealing the district court's dismissal of Industrial Indemnity with prejudice. The government argued that intervention was necessary because the voluntary dismissal of Industrial Indemnity with prejudice in Sylvester II could impair the government's ability to litigate its claims in Sylvester III and to raise affirmative defenses in another lawsuit pending in the claims court.[2] The court denied the motion. This appeal followed.
 
 II
 INTERVENTION
 A. STANDARD OF REVIEW
 
 16
 The district court's denial of a party's motion to intervene as a matter of right is reviewed de novo, except for the issue of timeliness, which is reviewed for abuse of discretion. County of Orange v. Air California, 799 F.2d 535, 537 (9th Cir.1986), cert. denied, 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).
 
 B. INTERVENTION UNDER FED.R.CIV.P. 24(a)(2)
 
 17
 We have adopted a four-part test to resolve applications for intervention of right under Fed.R.Civ.P. 24(a)(2):[3]
 
 
 18
 An order granting intervention as of right is appropriate if (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties.
 
 
 19
 Air California, 799 F.2d at 537. This test essentially mirrors the language of Fed.R.Civ.P. 24(a)(2). Generally, Rule 24(a)(2) is construed broadly in favor of proposed intervenors and "we are guided primarily by practical considerations." United States v. Stringfellow, 783 F.2d 821, 826 (9th Cir.1986) (citation omitted), vacated on other grounds, 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987).
 
 1. Timeliness
 
 20
 The district court did not address the timeliness of the government's motion to intervene. Had it done so, we would review that determination for abuse of discretion. Air California, 799 F.2d at 537. The record is complete, however, and it is plain from the record that the government's motion was not untimely. It is also plain that had the district court denied the motion on the ground of untimeliness it would have abused its discretion. Under these circumstances, it would be a waste of judicial resources to remand the timeliness issue to the district court for its initial consideration. Accordingly, we decide the issue. Cf. United States v. Hendricks, 743 F.2d 653, 656 (9th Cir.1984), cert. denied, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985) (this court has the power to decide issue not reached by the district court where the record is complete and the district court's determination would be subject to de novo review).
 
 
 21
 In determining whether a motion to intervene is timely, we evaluate three factors:
 
 
 22
 (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.
 
 
 23
 Air California, 799 F.2d at 537 (citing United States v. Oregon, 745 F.2d 550, 552 (9th Cir.1984)).
 
 
 24
 a. Stage of the Proceeding
 
 
 25
 The government initially declined to intervene. Later, it moved to intervene after Industrial Indemnity and SLS had been dismissed with prejudice, and after judgment had been entered against the sole remaining defendant, Covington Technologies.
 
 
 26
 The "general rule [is] that a post-judgment motion to intervene is timely if filed within the time allowed for the filing of an appeal." Yniguez v. Arizona, 939 F.2d 727, 734 (9th Cir.1991). In Yniguez, we cited with approval the district court's discussion of the timeliness issue. Yniguez v. Mofford, 130 F.R.D. 410, 414 (D.Ariz.1990), aff'd in part, rev'd in part, 939 F.2d 727 (9th Cir.1991). There, the district court stated:
 
 
 27
 Although post-judgment motions to intervene are generally disfavored, post-judgment intervention for purposes of appeal may be appropriate if certain requirements are met, the first of which is that the intervenors must act promptly after entry of judgment.... The second requirement is that the intervenors must meet traditional standing criteria.
 
 
 28
 Yniguez, 130 F.R.D. at 414 (citations omitted).
 
 
 29
 Industrial Indemnity argues that the government did not act promptly because its motion to intervene was not filed until almost six months after the stipulation for dismissal was approved by the district court. The government counters that it acted promptly because it objected to the dismissal shortly after receiving notice of it, and it moved to intervene promptly after entry of a final judgment within the period allowed for an appeal. See United Airlines, Inc. v. McDonald, 432 U.S. 385, 395-96, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977).
 
 
 30
 "Timeliness is to be determined from all the circumstances." NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). The NAACP court suggested that, to be timely, an intervenor did not necessarily have to move to intervene immediately. Id. at 367, 93 S.Ct. at 2603-04 (appellants could have "protect[ed] their interests" by either supplying the Department of Justice with information or by intervening). Here, the government acted promptly by objecting to the dismissal of Industrial Indemnity with prejudice, and by filing its post-judgment motion to intervene within the time a party to the action could have filed a notice of appeal.[4] Because the government did act promptly and because it clearly had standing to intervene, we conclude that the government's motion was timely.
 
 
 31
 b. Prejudice to Other Parties
 
 
 32
 Allowing the government to intervene at this stage of the case will not adversely affect other parties. Thus, this case is distinguishable from those cases in which we have found serious prejudice from intervention where intervention would seriously disrupt a delicate or complex settlement. See United States v. Oregon, 913 F.2d 576, 588-89 (9th Cir.1990) (delicately balanced, multi-party settlement involving fishing rights, where "the possibility of this settlement unraveling is so prejudicial that to allow [intervention] at this late date would be tantamount to disaster"), cert. denied, --- U.S. ----, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991); Air California, 799 F.2d at 538 (multiple parties reached complex arrangement regarding future development of commercial airline activity at John Wayne Airport).
 
 
 33
 Moreover, Industrial Indemnity's position following intervention is essentially the same as it would have been had the government intervened earlier. See Oregon, 745 F.2d at 663 (allowing intervention in part because party had failed to show that the passage of time had added to the possible prejudice).
 
 
 34
 In sum, there has been no showing of the kind of serious prejudice that would preclude the government's intervention. Cf. NAACP, 413 U.S. at 369, 93 S.Ct. at 2604-05 (serious disruption); Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 659 (9th Cir.) (serious prejudice), cert. denied, 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). See also Air California, 799 F.2d at 538 ("In evaluating [prejudice], courts have emphasized the seriousness of the prejudice which results when relief from long-standing inequities is delayed").
 
 
 35
 c. Reason for and Length of Delay
 
 
 36
 There was no improper delay by the government in bringing its motion to intervene. It sought to intervene to challenge, on appeal, the district court's dismissal of its claims against Industrial Indemnity. Even if the government had been a party to the action at the time the dismissal was entered, it would not have been able to appeal that dismissal order because it was not a final order. It did not dispose of all claims among all parties. See Fed.R.Civ.P. 54(b). Therefore, absent some circumstance permitting an interlocutory appeal, the earliest the government could have moved to intervene for purposes of taking an appeal from the dismissal order was after the judgment in the district court became final. It attempted to intervene at that time and filed its motion to intervene within the time a named plaintiff could have filed a notice of appeal. See United Airlines, Inc. v. McDonald, 432 U.S. at 396, 97 S.Ct. at 2471.
 
 
 37
 Having considered the three Air California factors bearing on the question of timeliness, see Air California, 799 F.2d at 537, we conclude that the government's motion to intervene was timely filed. We next consider the remaining factors pertaining to whether the government's application for intervention of right should have been granted under Fed.R.Civ.P. 24(a)(2).
 
 
 38
 2. Interest Relating to the Property or Transaction
 
 
 39
 Industrial Indemnity does not dispute that the government has an "interest relating to the property or transaction which is the subject of the action." Id. In a qui tam action, the government has an interest in the recovery of damages and penalties even when it declines to proceed with the action. 31 U.S.C. § 3730(d)(2).
 
 3. Impaired or Impeded Interest
 
 40
 Industrial Indemnity does not seriously dispute that the government's interest may be impaired or impeded if intervention is not granted. Indeed, Industrial Indemnity has taken the position that its dismissal with prejudice in Sylvester II will preclude the government from proceeding with claims against it in Sylvester III. While principles of claim preclusion and issue preclusion may not compel this result (a matter on which we express no opinion), the government's claims could be impaired if the doctrine of stare decisis were applied. See Stringfellow, 783 F.2d at 826 ("The prospect of stare decisis may, under certain circumstances, supply the requisite practical impairment warranting intervention as of right.")
 
 4. Adequate Representation
 
 41
 Under the qui tam enforcement scheme, the government must elect to intervene or allow the qui tam plaintiffs to conduct the action. 31 U.S.C. § 3730(b)(4). If the government declines intervention, the private plaintiffs may proceed with the action and their private counsel will run the lawsuit.
 
 
 42
 But this does not mean that the government has to stand idly by while the qui tam plaintiffs voluntarily dismiss a defendant. To the contrary, 31 U.S.C. § 3730(b)(1) requires the Attorney General's written consent prior to the dismissal of a defendant. It is one thing for the government to rely on the quality of the qui tam plaintiffs' representation in pursuing a case to judgment. It is quite another to hold the government bound by a deal made by the qui tam plaintiffs, without the government's knowledge or consent, to voluntarily dismiss its claims, with prejudice, against one of the defendants. When this occurs, it cannot be said that the qui tam plaintiffs' representation of the government's interests was adequate.
 
 
 43
 We conclude the district court erred in denying the government's motion to intervene to appeal the district court's order dismissing the government's claims against Industrial Indemnity with prejudice. We turn now to a consideration of the merits of the appeal from that order.
 
 III
 MERITS
 
 44
 Under 31 U.S.C. § 3730(b)(1), a qui tam action "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." Industrial Indemnity argues that the government's written consent was not required because the government initially declined to participate in the qui tam action. In support of this argument it cites Minotti v. Lensink, 895 F.2d 100 (2d Cir.1990), and United States ex rel. Laughlin v. Eicher, 56 F.Supp. 972 (D.D.C.1944).
 
 
 45
 Minotti and Eicher are inapposite. Both cases involved involuntary dismissals. In neither case did the government seek to intervene or object to the dismissals. In Eicher, the defendant moved to dismiss. The qui tam plaintiff objected to dismissal. The government had declined to proceed with the case at the outset, and the acting Attorney General had stated that in his opinion the complaint was "without merit and there can be no recovery." Eicher, 56 F.Supp. at 973.
 
 
 46
 In Minotti, the Second Circuit held that the consent requirement of section 3730(b)(1) "continues to apply only where the plaintiff seeks voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a), and not where the court orders dismissal." Minotti, 895 F.2d at 103-04 (footnote omitted).
 
 
 47
 To hold that the government's initial decision not to take over the qui tam action is the equivalent of its consent to a voluntary dismissal of a defendant with prejudice would require us to ignore the plain language of section 3730(b)(1). That language provides that "[t]he action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1) (emphasis added). Here the Attorney General did not consent to the dismissal. There was no compliance with section 3730(b)(1), nor was there any excuse for noncompliance. Cf. Minotti, 895 F.2d at 104; Eicher, 56 F.Supp. at 973.
 
 CONCLUSION
 
 48
 The government's motion to intervene for the purpose of appealing the dismissal of its claims against Industrial Indemnity with prejudice is granted. The district court erred in dismissing those claims without the attorney general's written consent. See 31 U.S.C. § 3730(b)(1).
 
 
 49
 The government has represented that it consents to the dismissal of its claims against Industrial Indemnity without prejudice. Accordingly, we reverse the district court's dismissal of the government's claims against Industrial Indemnity with prejudice, and we remand this case to the district court with instructions to dismiss those claims without prejudice.
 
 
 50
 REVERSED and REMANDED.
 
 
 
 [1]
 A prior action, designated Sylvester I, is unrelated to the disposition of this case
 
 
 [2]
 Industrial Indemnity filed a suit in the claims court against the government seeking a multi-million-dollar equitable adjustment in connection with the UEPH contract
 
 
 [3]
 The government also argues that it is entitled to intervene as of right under Rule 24(a)(1), which allows anyone to intervene in an action when a federal statute "confers an unconditional right to intervene." Fed.R.Civ.P. 24(a)(1). The government contends that 31 U.S.C. § 3730(c)(3) of the False Claims Act confers on it the unconditional right to intervene under Rule 24(a)(1). Section 3730(c)(3) of the False Claims Act authorizes the court to "permit the government to intervene at a later date [after the initial 60-day period for intervention has expired] upon a showing of good cause." We need not decide whether this statute gives the government the right to intervene under Rule 24(a)(1), because we allow intervention on the authority of Rule 24(a)(2)
 
 
 [4]
 The government's standing to intervene is plain. This is a qui tam action; the government's standing to apply for intervention is conferred by statute. 31 U.S.C. § 3730(c)(3)