**UNITED STATES of America ex rel. Alfred J. PEDICONE, Plaintiff,**

v.

**MAZAK CORPORATION, Defendant.**

No. C1–91–541.

United States District Court, S.D. Ohio, W.D.

Oct. 16, 1992.

James Helmer, Jr. and Ann Lugbill, Helmer, Lugbill & Whitman, Cincinnati, OH, for plaintiff Alfred J. Pedicone.

Paul D. Scott, Washington, DC and Gerald F. Kaminski, Cincinnati, OH, for the U.S.

Stephen J. Butler, Thompson, Hine & Flory and Todd B. Portune, Cohen, Todd, Kite & Stanford, Cincinnati, OH, for defendant.

## ORDER

BECKWITH, District Judge.

This matter came before the Court at an oral hearing on October 7, 1992 for the resolution of two issues.

This action was brought by *qui tam* Plaintiff, Alfred J. Pedicone, pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq.* While this matter has had a complex factual history, for purposes of the resolution of the two issues before the Court only a few facts are relevant. The Attorney General neither intervened in this False Claims Act action nor notified the Court of a decision not to intervene, as required by 31 U.S.C. § 3730(b)(4)(A) and (B). The *qui tam* Plaintiff and the Defendant have arrived at a settlement in principle of this action. The Attorney General has objected to the voluntary dismissal of this action without the consent of the United States.

At the October 7 hearing, the *qui tam* Plaintiff and the Attorney General presented arguments on the following issues:

(1) Whether the Attorney General has standing to object to the voluntary dismissal of an action under the False Claims Act when the United States has failed to either intervene in the action or notify the Court of its decision not to intervene, as required by 31 U.S.C. § 3730(b)(4); and

(2) Whether the *qui tam* Plaintiff is entitled to 30 percent of the settlement amount in this action.

In memoranda filed by the parties concerning the first issue presented above, both the *qui tam* Plaintiff and the Attorney General cited numerous authorities in support of their arguments. The parties have directed the Court's attention to several cases in which the courts have addressed the propriety of the dismissal of an action in which the United States has declined to intervene. The Court notes that those cases differ from the instant matter in which the United States neither intervened nor notified the Court of its decision not to intervene. Nevertheless, the Court finds some of those decisions to be instructive as to the issue of the United States' standing in this matter.

In the case of *United States ex rel. Stinson, Lyons, Gerlin & Bustamante v. Provident Life and Accident Insurance Company,* No. C–1–89–331 (E.D.Tenn. June 25, 1992), the District Court held that "once the United States declines to intervene, the *qui tam* plaintiff has the right to conduct the action and dismiss or settle the case without the consent of the Attorney General. The decision by the Attorney General not to intervene in and conduct the lawsuit is tantamount to consent by the Attorney General to have the action dismissed." *Id.,* at 2 [citing *Minotti v. Lensink,* 895 F.2d 100, 104 (2d Cir.1990); and *United States ex rel. Laughlin v. Eicher,* 56 F.Supp. 972, 973 (D.D.C.1944)].

In the *Minotti* case, the Court of Appeals for the Second Circuit determined that the purpose of the Attorney General consent provision of the False Claims Act is to ensure "that legitimate claims against an alleged wrongdoer are not dismissed before the United States has been notified of the claims or has had the opportunity to proceed with the action." *Minotti,* 895 F.2d at 104. "Once the United States formally has declined to intervene in an action ..., however, little rationale remains for requiring consent of the Attorney General before an action may be dismissed. Rather the Attorney General's refusal 'to enter the suit may be taken as tantamount to the consent of the District Attorney to dismiss the suit.'" *Id.,* at 104 (quoting *United States ex rel. Laughlin v. Eicher,* 56 F.Supp. at 973).

In *United States ex rel. McGough, et al. v. Covington Technologies Company,* 967 F.2d 1391, 1396–1397 (9th Cir.1992), the Court of Appeals for the Ninth Circuit reviewed a district court's dismissal of the claims against one of the defendants without the consent of the Attorney General. The Circuit Court recognized that the United States' formal decision not to intervene permits the *qui tam* plaintiff to proceed and run the lawsuit. Then, when the plaintiff wishes to dismiss the action or a part of the action, the question becomes one of the adequacy of the *qui tam* plaintiff's representation of the United States' interests. The Circuit Court reversed the lower

court, apparently on the ground that the *qui tam* plaintiff had not adequately represented the government's interests in the case.

The parties cited only one case from this district. That case is *United States ex rel. Barbara Burch, et al. v. Piqua Engineering, Inc.*, 803 F.Supp. 115 (S.D.Ohio 1992). In that opinion, this Court held that the False Claims Act is constitutional, because the executive branch retains sufficient control over litigation to ensure that the laws are faithfully executed. For the proposition that such control is a requirement for constitutionality, the Court cited *Morrison v. Olson*, 487 U.S. 654, 696, 108 S.Ct. 2597, 2622, 101 L.Ed.2d 569 (1988).

While the Court finds the cases cited by the parties in this matter to be instructive, the Court notes that this is a case of first impression. In all of the cases previously decided, the United States has complied with § 3730(b)(4) by either intervening or notifying the court of a decision not to intervene. That is not the situation in this matter. Here, though granted an extension of time in which to do so, the United States neither intervened nor notified the Court of its intention not to intervene. Accordingly, the United States has failed to comply with the statute. This Court must decide whether the United States may now object to the dismissal of this action pursuant to a settlement between the *qui tam* Plaintiff and the Defendant.

█ This Court agrees with the finding of the *Piqua Engineering* court, which found that the constitutionality of the *qui tam* provisions of the False Claims Act is dependent upon the executive branch's retention of control over litigation under the Act. That control is vested in the Attorney General pursuant to 31 U.S.C. § 3730(c)(1), which gives the Attorney General the first option in proceeding with False Claims Act cases. The Court determines, however, that the constitutionality of the Act is not implicated in any particular case by the United States' failure to intervene in that action.

█ The Court holds that the Attorney General's failure to comply with the requirement of § 3730(b)(4) divests the Unit-

ed States of standing under the statute to object to the dismissal of this action. While the language of § 3730(b)(1) might be read to suggest that no action may be dismissed without the consent of the Attorney General, even that interpretation of the language would require the Attorney General to comply in every material respect with the other provisions of the statute. Having failed to comply with the statute, the Attorney General should not be heard to object to the settlement and dismissal of this case.

The language of the Act does not permit the Court to treat the Attorney General's silence as a notification of its decision not to intervene. The Act clearly requires written notification to the Court, which was not provided in this matter. Even were the Court to give the Attorney General's silence such an interpretation, the Court finds that the United States does not have equitable standing to object to the dismissal of this case.

█ The policy reason for the provision of § 3730(b)(1), which requires the Attorney General's consent for a dismissal of a False Claims Act case, is that the United States must be given the authority to protect its own interests when a *qui tam* plaintiff fails to do so. *See, Covington Technologies*, 967 F.2d at 1396–1397. That section does not give the Attorney General the blanket authority to object to any dismissal by a *qui tam* plaintiff after the United States has declined to pursue the suit. Rather, it provides a remedy for inadequate representation of the United States' interests by a *qui tam* plaintiff. Surely Congress did not intend to give the United States a veto power over actions in which it has previously declined to intervene. By declining to intervene, the Attorney General confers control of the case upon the *qui tam* plaintiff and may not object to actions taken, unless the *qui tam* plaintiff has abandoned his or her role as protector of the interests of the United States. Accordingly, the Court holds that the *qui tam* Plaintiff may dismiss this action without the consent of the Attorney General upon a finding by the Court that

the *qui tam* Plaintiff has adequately represented the United States' interests.

In this matter, the Court finds that the *qui tam* Plaintiff has more than adequately protected the United States' interests. Through perseverance and diligence, the *qui tam* Plaintiff has obtained a very favorable settlement, which benefits the United States. He has also prosecuted a serious fraud claim on behalf of the people of the United States that never might have been prosecuted if left to the Attorney General. Having found that the *qui tam* Plaintiff has adequately represented the interests of the United States, the Court finds that the Attorney General is without equitable standing to object to the dismissal of this False Claims Act action. The Court hereby DIRECTS the *qui tam* Plaintiff to submit for execution a final entry of dismissal, including the final terms of the settlement of the False Claims Act portion of this action, on or before November 16, 1992. At that time, this action will be DISMISSED.

The Court now turns to the issue of the *qui tam* Plaintiff's share of the settlement. Section 3730(d)(2) of Title 31 provides, in pertinent part, as follows:

> If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall not be less then 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds.

At the October 7 hearing, the United States argued that the *qui tam* Plaintiff should receive only 27 percent of the settlement amount in this action, because this matter was settled rather than tried.

This Court does not find any support for the government's position that the *qui tam* Plaintiff's share should differ depending upon whether the case is settled or tried. In fact, the language of the statute makes no distinction in providing for a 25 to 30 percent share whether or not the matter is resolved without a trial.

The Court finds that the *qui tam* Plaintiff has pursued this action at considerable personal and professional expense to himself. An award of 30 percent of the settlement would encourage other potential whistleblowers to take risks similar to those taken by the *qui tam* Plaintiff in this matter to expose fraud against the United States. Accordingly, the Court finds an award of the full statutory amount of 30 percent of the settlement to be appropriate in this matter.

The Court hereby further ORDERS that the government comply with the provisions of the final settlement agreement regarding confidentiality.

IT IS SO ORDERED.