**UNITED STATES of America ex rel. Theresa BURR, Plaintiff,**

v.

**BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., a Florida corporation, Defendant.**

No. 91–134–CIV–J–16.

United States District Court,
M.D. Florida,
Jacksonville Division.

March 23, 1995.

Brian M. Kane, Asst. U.S. Atty., Jacksonville, FL, Michael C. Theis, U.S. Dept. of Justice, Civ. Div., Washington, DC, for plaintiff U.S.

William George Cooper, Tracy K. Arthur, Jacksonville, FL, Dennis M. Abrams, Lowenthal & Abrams, P.C., Bala Cynwyd, PA, for plaintiff Burr.

John M. McNatt, Jr., Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, Jacksonville, FL, for defendant.

## ORDER AND OPINION

JOHN H. MOORE, II, Chief Judge.

This cause is before the Court on the Relator's Motion for Attorney's Fees and Costs filed August 16, 1994, (Doc. # 206) and Motion for Percentage of False Claims Settlement filed September 1, 1994 (Doc. # 210). The Defendant filed a response in opposition to the motion for attorney's fees and costs on September 2, 1994. The Plaintiff filed a response in opposition to the motion for the Relator's percentage of the settlement proceeds on September 29, 1994. Upon due consideration of the motions and the legal premises therein, the Court finds that the motions should be granted in part and denied in part and the fee application referred to the magistrate judge for a report and recommendation.

### I. Background Facts

Theresa Burr ("Relator") filed this *qui tam* action against Blue Cross Blue Shield of Florida (BCBSF) pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3730 (1988), on February 19, 1991. The United States intervened and filed an Amended Complaint on July 10, 1992, alleging numerous instances of fraud involving the processing of Medicare claims. The Relator continued as a party and on August 4, 1993, the United States and BCBSF entered into a proposed settlement.

The Court referred this matter to a magistrate judge to conduct a hearing and prepare a report and recommendation on the fairness, adequacy, and reasonableness of the proposed settlement. The Court entered an Order on August 2, 1994, approving the proposed settlement and notwithstanding the objections made by the Relator, dismissed the action with prejudice. Subsequent to the filing of the motions for attorney's fees, costs, and percentage of the settlement proceeds, the Relator appealed this decision to the Eleventh Circuit Court of Appeals. Consequently, this Court stayed its ruling on these motions in the interest of judicial economy pending the Relator's appeal of the Court's approval of the settlement of this action. On November 11, 1994, the appellate court entered a judgment of voluntary dismissal of the appeal. Accordingly, the Court finds that the stay entered by this Court should now be lifted.

On December 9, 1994, the Plaintiff filed a Notice of Advisement of Intent to Make Payment to Relator which indicated that the government intended to distribute fifteen percent of the $10 million settlement proceeds to the Relator. The Relator has specifically reserved her right to have the Court determine her share of the settlement proceeds. By Order of the Court dated February 6, 1995, the Court granted a charging lien in favor of Epstein, Becker & Green, P.C., the Relator's initial counsel, and specifically prohibited the Plaintiff from distributing any of the settlement proceeds to the Relator until the issue of this counsel's legal fees was resolved. Although the Court determines that the Relator is entitled to $1.5 million as her percentage of the settlement proceeds in this litigation, the Court finds that these proceeds should not be disbursed

until the issue of Epstein, Becker & Green's legal fees is resolved.

## II. Discussion

### A. False Claims Act (FCA) *qui tam* Provisions

Congress enacted the FCA in 1863 with the primary purpose of being the government's litigation tool for combatting fraud against the federal government.[1] The FCA authorizes private individuals, in addition to the Attorney General, to file civil actions for enforcement. 31 U.S.C.S. § 3730(b) (Supp. 1994). Suits by private individuals, or *qui tam* suits, may be brought for any substantive violation of the Act.[2] *Id.* at § 3730(b)(1). However, the suit is brought in the name of the Government which has the option of intervening and proceeding with the action. *Id.* at § 3730(b)(1) & (4). If the Government declines to intervene in the *qui tam* action, the private individual or relator possesses the right to conduct the action. *Id.* § 3730(b)(4).

If the Government chooses to intervene, it has the primary responsibility for prosecution and may settle or dismiss the action. *Id.* § 3730(c)(2). The relator may continue as a party to the *qui tam* action and may object to its settlement or dismissal. *Id.* § 3730(c). However, the action may be settled or dismissed notwithstanding objection provided the relator has been notified of the proposed action and an opportunity for a hearing on the motion. *Id.* § 3730(c)(2). In approving a proposed *qui tam* settlement, the court must find that it is fair, adequate, and reasonable under all the circumstances. *Id.* § 3730(c)(2)(B).

The FCA also provides for the award of a percentage of any settlement proceeds as well as reasonable attorney's fees and costs. *Id.* § 3730(d)(1). The FCA specifically provides that in an action where the government proceeds with a case brought by a private individual, the relator "shall ... receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action." *Id.* (emphasis added.) Further, a relator "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant." *Id.*

### B. Percentage Of The Settlement Proceeds

■ Section 3730(d)(1) of the FCA has been interpreted to mean that in a case not based primarily on disclosures of specific information other than the information provided by the relator[3] individuals who substantially and independently contribute to the government's recovery are entitled to recover the minimum 15 percent of the settlement proceeds. *United States v. Stern*, 818 F.Supp. 1521, 1522 (M.D.Fla.1993). However, a relator is entitled to recover a full 30 percent of the settlement in such a case where the relator has suffered considerable personal and professional expense. *United States v. Mazak Corp.*, 807 F.Supp. 1350, 1353 (S.D.Ohio 1992). The award of the maximum statutory amount in this instance is intended to encourage other potential whistle-blowers to take similar risks in order to expose fraud against the United States. *Id.* Accordingly, the Court is persuaded that the maximum recovery is reserved for situations where the relator actively and uniquely aids the government in the prosecution of the case. *See United States v. Covington Technologies Co.*, No. 88–5807–JMI (Bx), 1991 WL 643048 (C.D.Cal. Oct. 22, 1991).

---

**1.** Senate Judiciary Committee, False Claims Amendments Act of 1986, S.Rep. No. 345, 99th Cong., 2d Sess. 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266.

**2.** The term "qui tam" is short for "qui tam pro domino rege quam pro se imposo sequitur" which means "who brings the action as well for the king as for himself." *Bass Anglers Sportsman's Society of Am. v. U.S. Plywood–Champion Papers, Inc.*, 324 F.Supp. 302, 305 (S.D.Tex. 1971).

**3.** See *United States v. CAC–Ramsay, Inc.*, 744 F.Supp. 1158, 1161 (S.D.Fla.1990) for an example of a *qui tam* action based upon the disclosure of specific information where the relator is only entitled to receive a maximum 10 percent of the settlement proceeds under § 3730(d)(1) of the FCA.

As a threshold · matter, the Court finds that the lengthy factual record in this matter is sufficient for the Court to make this determination;· therefore, the Relator's request for an evidentiary hearing shall be denied. The potential range of the Relator's percentage of the $10 million settlement proceeds is $1.5 million to $2.5 million. Of course, the Relator requests $2.5 million or 25% of the settlement amount and the government argues that she is only entitled to $1.5 million or 15% of the settlement amount. This dispute is illustrative of the course of conduct in this litigation. Although a settlement was announced on August 3, 1993, the parties succeeded in litigating the appropriateness of the Court's approval of the settlement for another year. Even then, the Relator appealed the Court's decision to approve the settlement and ironically, decided to drop the appeal only after the Court stayed ruling on the instant motions pending the appeal. At long last, the Court is presented with the adjudication of the final issues in this "litigious" matter. Yet the Court is once again confronted with disagreement and the parties election to litigate to the very end.

The Plaintiff has advised the Court`of its intent to distribute $1.5 million of the settlement proceeds to the Relator. The pertinent issue then is whether the Relator is entitled to a greater percentage of the settlement proceeds. The Court thinks not. The FCA specifically delineates that a relator is entitled to a percentage of the settlement proceeds, within the applicable range, to *"the extent to which the person substantially contributed to the prosecution of the action."* 31 U.S.C. § 3730(d) (emphasis added). Although a realtor may be entitled to the statutory maximum percentage in situations where the relator has suffered personal or professional hardship, no such showing has been made in the present case. In fact, the Relator fails to even address this point and relies instead on bold self-appreciation for her efforts. However, the Court finds that although the Relator may have initiated this action, her contribution to the successful settlement of this matter was minimal at best. The record clearly demonstrates that the Relator's sworn affidavit instigated an investigation by several governmental agencies.

This investigation lasted over three years and the Relator repeatedly objected to being left out of this process. Eventually, the Relator was permitted limited discovery regarding the proposed settlement of this action, to which she vigorously opposed. The Court found much of the·Relator's opposition to be wholly without merit. Therefore, the Court finds that $1.5 million, or 15% of the settlement proceeds, accurately·reflects the Relator's contribution to the prosecution of this action.

Implicit within the Court's·finding that the Relator is entitled to $1.5 million or 15% of the settlement proceeds is that the amount of the settlement was $10 million. The Relator argues that the actual settlement was for $25 million. The Court disagrees. The report and recommendation of the magistrate judge adopted by this Court on August 1,·1994, specifically found that BCBSF agreed to pay the United States $10 million in settlement of this action. The Court is not persuaded by the Relator's contention that the value of sums received by BCBSF from third parties in settlement of several collateral claims should be added to this figure. Specifically, in addition to the settlement between the United States and BCBSF, this global settlement included a compromise and settlement of an administrative claim by BCBSF against the Health Care Financing Administration as well as a claim against GTE Data Services, Inc. However, the settlement of these collateral claims are only incidental to this *qui tam* action and should not be considered when determining the Relator's percentage of the settlement proceeds pursuant to § 3730(d)(1). Accordingly, the Relator is entitled to 15% of the $10 million settlement, or $1.5 million, pursuant to § 3730(d)(1) of the FCA.

### C. Attorney's Fees And Costs

Federal courts have· applied the standard ."lodestar" methodology in determining a reasonable amount of attorneys' fees in *qui·tam* actions. *Stern,* 818 F.Supp. at 1522; *United States v. General Electric,* 808 F.Supp. 584, 585 (S.D.Oh.1992) (citing *Northcross v. Bd. of Educ. of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979)). The "starting point" for setting an attorney's fee

is to determine the lodestar figure: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988); *Bowen v. Southtrust Bank of Alabama*, 760 F.Supp. 889, 896 (M.D.Ala. 1991). In making this determination, the district court is guided by the 12 factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of any professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717–19.

■■■ The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. In circumstances where the court is faced with an inadequate fee application, the law in this circuit is well established that:

> [t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.

*Id.*

Accordingly, the district court may make the award on its own experience when the time or fees claimed seemed expanded or there is a lack of documentation or testimonial support. *Id.* The district court's order must articulate the decisions it made, give principled reasons and show calculations. *Id.* (citations omitted). "If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." *Id.* (citations omitted).

■■■ The Relator's fee application requests over $700,000.00 in attorney's fees and costs representing the payment of fees for twenty-nine attorneys, paralegals, and assistants. More importantly, however, these fees are for compensation for over four thousand billing hours. Of course, the parties dispute the requested fees and have requested additional discovery and an evidentiary hearing on the fee application. The Relator seeks discovery from BCBSF as to the number of hours and amount of fees billed to BCBSF and BCBSF requests the opportunity to conduct discovery if the Court determines that the Relator is entitled to any fees and costs. BCBSF also raises significant factual and legal issues regarding the Relator's course of conduct during the proceedings in which she contested the proposed settlement as well as the proceedings leading up to the settlement agreement. Accordingly, the Court finds that since the matter of the Relator's fee application necessitates the holding of a hearing, and involves the proceedings presided over by the magistrate judge, the Court finds that this matter should be referred to the magistrate judge for a report and recommendation.

For the foregoing reasons, it is now

**ORDERED AND ADJUDGED:**

1. That the Motion of Relator to Lift Stay and for Rule 16 Conference filed March 7, 1995, (Doc. # 227) is hereby **GRANTED** in part and the stay imposed by this Court on October 7, 1994, (Doc. # 220) is hereby **LIFTED.** The motion for a Rule 16 Conference is hereby **DENIED.**

2. That The Relator's Motion for Percentage of False Claims Settlement filed September 1, 1994, (Doc. # 210) is hereby **GRANTED** in part and pursuant to 31 U.S.C. § 3730(d)(1) the Relator, Theresa Burr, is awarded $1.5 million representing 15% of the $10 million settlement; however, the charging lien granted in favor of Epstein,

Becker & Green, P.C. in the Court's Order of February 6, 1995, shall remain intact pending the resolution of Epstein, Becker & Green's legal fees. The Relator's Motion for an Evidentiary Hearing is hereby **DENIED AS MOOT.**

3. That the Relator's Motion for Attorney's Fees and Costs filed August 16, 1994, (Doc. # 206) and Motion for an Evidentiary Hearing (Doc. # 208) are hereby **REFERRED** to Magistrate Judge Snyder to conduct all necessary proceedings and to submit to this Court proposed findings of fact and recommendations in accordance with 28 U.S.C. § 636(b) and Local Rule 6.01(a).

**DONE AND ORDERED.**