799 F.2d 535
 24 ERC 2007, 5 Fed.R.Serv.3d 1428
 COUNTY OF ORANGE, Plaintiff-Appellee,
v.
AIR CALIFORNIA; American Airlines; America West Airlines;
Continental Airlines, Inc.; Frontier Airlines, Inc.; Jet
America; Pacific Southwest Airlines; Republic Airlines,
Inc.; Western Airlines, Inc.; Alaska Airlines, Inc.; Muse
Air Corporation; Trans World Airlines, Inc.; United
Airlines, Inc.; Federal Aviation Administration;
McDonnell-Douglas Corporation; City of Newport Beach; Stop
Polluting our Newport Corporation; Airport Working Group of
Orange County, Inc., Defendants-Appellees.
City of Irvine, Applicant for Intervention-Appellant.
 No. 85-6501.
 United States Court of Appeals,
Ninth Circuit.
 Argued July 8, 1986.
Submitted July 29, 1986.
Decided Sept. 9, 1986.
 
 Michael Scott Gatzke, Gatzke, Lodge & Mispagel, Carlsbad, Cal., Josephine E. Powe, Los Angeles, Cal., E. Clement Shute, Jr., San Francisco, Cal., for plaintiff-appellee.
 John E. McDermott, Memel, Jacobs, Pierno, Gersh & Ellsworth, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: ANDERSON, POOLE, and THOMPSON, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 The City of Irvine (Irvine) appeals from a district court order denying a motion to intervene as a matter of right, Fed.R.Civ.P. 24(a)(2), and denying a motion to intervene permissively, Fed.R.Civ.P. 24(b)(2). We affirm.
 
 I. FACTS
 
 2
 On February 26, 1985, the County of Orange (Orange County) approved and adopted a plan (the Airport Project Plan) for the future development of commercial airline activity at John Wayne Airport (JWA). Prior to adoption of the Airport Project Plan, and pursuant to the requirements of the California Environmental Quality Act (CEQA) and the National Environmental Policy Act (NEPA), a study was prepared by Orange County and the Federal Aviation Administration concerning the proposed environmental effects of the Airport Project Plan (this study is hereinafter referred to as EIR 508/EIS). Orange County certified that EIR 508/EIS was legally adequate under CEQA.
 
 
 3
 Due to the fact that there was interrelated litigation pending before both state and federal courts challenging the Airport Project Plan and the adequacy of EIR 508/EIS, Orange County filed an action seeking a declaratory judgment as to the lawfulness and adequacy of the Airport Project Plan and EIR 508/EIS and requesting the court to enjoin the City of Newport Beach and others from litigating the CEQA issues in state court. Orange County named as defendants 13 airlines, an aircraft manufacturer, the City of Newport Beach (Newport) located adjacent to JWA, and several citizens' groups generally opposed to any increase in operations at JWA.
 
 
 4
 The district court granted a temporary restraining order and subsequently issued a preliminary injunction preventing Newport and the citizens' groups from filing new CEQA actions in state court. Consequently, those parties filed counterclaims against Orange County. The counterclaims alleged violations of CEQA and sought to enjoin Orange County from increasing the number of flights at JWA, constructing the new passenger terminal, or otherwise implementing the Airport Project Plan.
 
 
 5
 In the spring of 1985, Orange County, Newport, and the citizens' groups began negotiating a settlement. The progress of the negotiations was chronicled by the press. In August, 1985, the parties agreed to a proposed settlement. Irvine claims it became aware of the proposed settlement on or about August 20, 1985. On September 18, 1985, the district court was told of the tentative agreement. On September 20, 1985, Irvine filed a motion to intervene as a matter of right and permissively. Irvine's motion was argued on October 21, 1985, and the district court denied the motion in a final order issued October 28, 1985. The proposed settlement agreement was formally submitted to the court for approval on November 18, 1985. On December 13, 1985, the district court entered a judgment in accordance with the Stipulation for Entry of Judgment by Certain Settling Parties.
 
 II. DISCUSSION
 A. Intervention as a Matter of Right
 1. Standard of Review
 
 6
 The district court's denial of a party's motion to intervene as a matter of right is reviewed de novo, United States v. Stringfellow, 783 F.2d 821, 825 (9th Cir.), cert. granted on other grounds, sub. nom. Stringfellow v. Concerned Neighbors in Action, --- U.S. ----, 106 S.Ct. 2273, 90 L.Ed.2d 717 (1986); United States v. $129,374 in U.S. Currency, 769 F.2d 583, 585 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 863, 88 L.Ed.2d 901 (1986), except for the issue of timeliness, which is reviewed for abuse of discretion. NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973); $129,374 in U.S. Currency, 769 F.2d at 585.
 
 2. Discussion
 
 7
 A four-part test has been adopted by this circuit to determine whether applications for intervention as a matter of right pursuant to Rule 24(a)(2) should be granted:
 
 
 8
 An order granting intervention as of right is appropriate if (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties.
 
 
 9
 Stringfellow, 783 F.2d at 826 (citing Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 527 (9th Cir.1983); County of Fresno v. Andrus, 622 F.2d 436, 438 (9th Cir.1980)).
 
 
 10
 a. Timeliness
 
 
 11
 We find that the district court's denial of Irvine's motion to intervene as a matter of right because the motion was untimely was not an abuse of discretion.
 
 
 12
 In determining timeliness, three factors are weighed: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. United States v. State of Oregon, 745 F.2d 550, 552 (9th Cir.1984). Mere lapse of time alone is not determinative. Id.
 
 
 13
 The district court held that "[t]here's no doubt in my mind that the possibility of this settlement unraveling is so prejudicial that to allow the City of Irvine to intervene at this late date would be tantamount to disaster here...." This statement implicates the first two factors that must be weighed. First, Irvine's motion was made only after a proposed, and as it turned out, final settlement had been reached by all the parties after five long years of litigation. In a similar case, this court found that a motion to intervene filed seventeen days after a consent decree had become effective was untimely. Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 658 (9th Cir.), cert. denied, 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). The consent decree had been preceded by extensive and well-publicized negotiations. Id. at 659. "Since the motion was filed after the consent decree was approved, the first factor [the stage of the proceeding] weighs heavily against [the intervenor]." Id. at 659. Although Irvine did intervene before the Stipulated Judgment was officially approved by the district court, the fact that Irvine waited until after all the parties had come to an agreement after five years of litigation should nevertheless weigh heavily against Irvine.
 
 
 14
 "In evaluating the second factor [prejudice to other parties], courts have emphasized the seriousness of the prejudice which results when relief from long-standing inequities is delayed." Id. The district court felt that to allow Irvine to intervene "at this late date" would be the undoing of five years of protracted litigation finally resolved by the Stipulated Judgment. Clearly, this would prejudice the parties involved. Equally clear is the fact that the district court judge, who presided over the case from its inception, did not abuse his discretion in recognizing this potential for prejudice to the other parties if Irvine was allowed to intervene.
 
 
 15
 Thus, to prevail, Irvine must convincingly explain its delay in filing its motion to intervene. Irvine argues that it did not intervene sooner because it did not know until August 20, 1985, the date it learned of the proposed Stipulated Judgment, that its interests were not being adequately represented by the original parties. In other words, this was allegedly the first time that Irvine realized that the end result of the protracted litigation would not be entirely to its liking. In Alaniz, the crux of the appellant's argument was that they did not know the settlement decree would be to their detriment. We held that, surely, they should have known the risks of waiting. Alaniz, 572 F.2d at 659. "To protect their interests, appellants should have joined the negotiations before the suit was settled." Id. In the case at bar, Irvine should have realized that the litigation might be resolved by negotiated settlement. The local newspapers reported the ongoing negotiations between the parties. Furthermore, Irvine should have contemplated that due to the serious existing facility constraints at JWA, a likely result of the negotiations would be an agreement to look to other facilities for help, including El Toro. In order to protect itself against this eventuality, Irvine should have intervened sooner.[1] The district court did not abuse its discretion in denying, because it was untimely, Irvine's motion to intervene.
 
 
 16
 Because we conclude that Irvine's motion to intervene was untimely, we need not reach the remaining elements of the test. Nevertheless, we wish to make clear that Irvine is not precluded by stare decisis, collateral estoppel, or res judicata from taking other action.
 
 
 17
 There is no stare decisis effect to any future proceedings Irvine may wish to bring because the product of the litigation at bar was a Stipulated Judgment made pursuant to a negotiated settlement effecting only the signing parties. See United States v. Allegheny-Ludlum Industries, 517 F.2d 826, 845-46 n. 21 (5th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976) (consent decrees--products of negotiation rather than contested litigation--are not likely to carry stare decisis effects measurably adverse to the proposed intervention in any future proceedings).
 
 
 18
 Nor is there any res judicata or collateral estoppel effect that would impair Irvine's ability to litigate its concerns in a future, separate action. See Madison Square Garden Boxing, Inc. v. Shavers, 562 F.2d 141, 143 (2d Cir.1977) (a judgment entered on stipulation is binding upon the consenting parties only). Furthermore, the Stipulated Judgment itself expressly states that:
 
 
 19
 pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the judgment to be entered pursuant to this stipulation is a final judgment as to the claims between the settling parties.
 
 B. Permissive Intervention
 1. Standard of Review
 
 20
 Permissive intervention is committed to the broad discretion of the district court and is therefore reviewed by this court for abuse of discretion. United States v. $129,374 in U.S. Currency, 769 F.2d 583, 586 (9th Cir.1985).
 
 2. Discussion
 
 21
 A motion for permissive intervention must also be timely. Our conclusion that the district court did not abuse its discretion in denying Irvine's motion to intervene as a matter of right due to its untimeliness applies equally here.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 There is credible evidence in the record that Newport or the other defendants never fully represented Irvine's interests and that Irvine should have recognized this much earlier and, thereby, intervened much sooner