961 F.2d 217
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Andre SARRASSAT, Irma Alden, Angelena C. Augustine, and
Victoria Foley, individually and on behalf of
classes of persons similarly situated,
Plaintiffs-Appellees,
v.
Louis W. SULLIVAN, Secretary, Department of Health and Human
Services, Defendant-Appellee.
American Health Care Association, Applicant in intervention-Appellant.
 No. 89-16326.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 4, 1991.
Decided April 28, 1992.
 
 Before TANG, FARRIS and D.W. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Andre Sarrassat and other named plaintiffs and proposed classes ("Sarrassat" or "Plaintiffs") sued Louis W. Sullivan, Secretary of the Department of Health and Human Services, over the administration of Medicare benefits in nursing homes. After the district court approved a settlement between these parties, the American Health Care Association ("AHCA") moved to intervene in the action. A magistrate judge denied the motion, and this appeal ensued. We affirm.
 
 
 3
 The district court denied AHCA both intervention of right pursuant to Fed.R.Civ.P. 24(a)(2) and permissive intervention under Fed.R.Civ.P. 24(b). Rule 24(a)(2) requires that a motion to intervene of right be timely. Officers for Justice v. Civil Serv. Comm'n, 934 F.2d 1092, 1095 (9th Cir.1991). Whether the motion is timely depends on three factors: (1) the stage of proceedings at which intervention is sought, (2) the degree of prejudice resulting to the parties if intervention is permitted, and (3) the reasons for and the length of the delay in seeking intervention. Id. "Although a lapse of time is not determinative, a substantial delay will weigh heavily against intervention." Id. In analyzing timeliness, the focus is on the date the prospective intervenor should have been aware its interests would not be protected adequately by the parties. Id.[1]
 
 
 4
 In County of Orange v. Air California, 799 F.2d 535 (9th Cir.1986), cert. denied, 480 U.S. 946 (1987), the City of Irvine appealed the denial of its motion to intervene in a case filed in early 1985. Id. at 536. Parties to the action began settlement negotiations in spring of that year; the negotiations' progress received press coverage. Id. at 537. On September 20, 1985, two days after the district court was informed of a proposed settlement, Irvine moved to intervene. Id. The court denied the motion in October, and entered judgment pursuant to the settlement agreement in December 1985. Id.
 
 
 5
 We upheld the denial of Irvine's motion to intervene of right because (1) "Irvine waited until after all the parties had come to an agreement after five years of litigation"; (2) the parties would be prejudiced by "the undoing of five years of protracted litigation finally resolved by the Stipulated Judgment"; and (3) "Irvine should have realized that the litigation might be resolved by negotiated settlement" to its detriment and therefore "should have intervened sooner." Id. at 538 (footnote omitted). We applied the same reasoning to uphold the denial of Irvine's motion for permissive intervention. Id. at 539.
 
 
 6
 We think Air California controls this case. First, AHCA filed its motion to intervene at an even later stage in the district court proceedings than did the prospective intervenor in Air California. AHCA moved to intervene almost two months after the district court approved the litigants' settlement. Second, AHCA's express purpose in seeking intervention was to attack the legality of the parties' court-approved settlement, achieved after more than a year of formal proceedings. Thus, intervention would at least prejudice the plaintiffs, if not the defendant. In view of these two factors, AHCA "must convincingly explain its delay in filing its motion to intervene." Air California, 799 F.2d at 538. It does not.
 
 
 7
 The complaint in this action was filed on March 25, 1988. According to Sarrassat, AHCA's counsel inquired of Plaintiffs' counsel about the lawsuit shortly after its inception. Plaintiffs made this assertion in the lower court, in their brief on appeal, and at oral argument before this Court,[2] yet the prospective intervenor has never responded to it.
 
 
 8
 Indeed, AHCA implicitly acknowledges the truth of the matter by arguing that the public was not notified of the suit and settlement until May 1989, and by asserting that "the original parties to this action made absolutely no effort to inform the affected industry ... until issuance of the instructions," and by further contending that AHCA "acted promptly when it learned of the implications of this case through the newly published instructions." Brief of Appellant-Intervenor at 23-24 (emphasis added).[3]
 
 
 9
 In view of AHCA's apparent knowledge of this lawsuit, and the fact that AHCA had cause to make inquiries about it, we think AHCA should have known of the possible effects of the litigation long before the parties settled. AHCA concedes as much: "[I]t should have been clear from the outset that the litigation would adversely affect the interests and rights of the long-term care providers...." Id. at 24.
 
 
 10
 Upon review of the Plaintiffs' complaint, we agree. Specifically, the complaint reveals the possibility that the lawsuit could result in AHCA members not being allowed to bill patients while their appeals of coverage denials are pending.
 
 
 11
 In the original complaint, Sarrassat claimed that, "[a]lthough the Medicare instructions to fiscal intermediaries state that nursing homes should send 'no payment' bills for beneficiaries who insist that claims be submitted despite the facility denial determination, many providers refuse to do so."
 
 
 12
 Sarrassat also alleged that nursing homes "are unwilling to submit claims to Medicare in unclear or close cases because of the system used by [the federal defendant] to make determinations on [nursing home] level of care claims. This system includes various financial incentives for [nursing homes] not to submit such claims, particularly the waiver of liability presumptions and length of stay norms."
 
 
 13
 Finally, Sarrassat prayed for "an order in the nature of mandamus directing defendant," inter alia, to "[s]end new and adequate facility denial notices to each of the plaintiffs and afford them the opportunity to appeal their facility denials pursuant to the requirements described above." (Emphasis added.)
 
 
 14
 We think AHCA is correct in its assessment that anyone familiar with the nature of the litigation would have realized its possible effect on the interests of nursing homes that AHCA seeks to protect through intervention. Because AHCA knew of the lawsuit shortly after its inception and had reason to make inquiry about it, AHCA should have known that the results it now seeks to attack were possible. AHCA had no reason to believe that the litigants ever had its interests in mind as the lawsuit proceeded. Cf. Waller v. Financial Corp. of Am., 828 F.2d 579, 582 (9th Cir.1987) ("there is no reason to believe that the parties ... represent Anderson's interests").[4]
 
 
 15
 Because AHCA was aware of the lawsuit, had sufficient cause to inquire about it, and therefore should have been aware of its nature and the need for representation shortly after the action was filed, we conclude that AHCA did not seek intervention at the earliest practicable time. Instead, the prospective intervenor waited for more than a year after the suit was filed, and almost two months after the parties settled, before filing a motion to intervene. Accordingly, we conclude that AHCA's motion to intervene was untimely. See Air California, 799 F.2d at 538-39 (denying both permissive intervention and intervention of right); see also Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 658-59 (9th Cir.), cert. denied, 439 U.S. 837 (1978); Aleut Corp. v. Tyonek Native Corp., 725 F.2d 527, 530 (9th Cir.1984).
 
 
 16
 AHCA argues that its motion was timely under Natural Resources Defense Council v. Costle, 561 F.2d 904, 907-08 (D.C.Cir.1977). We disagree. In Costle, "intervention was not sought to upset the settlement agreement but to participate in its future administration." Id. at 908. Here, by contrast, AHCA sought "to challenge the lawfulness of certain terms of the Stipulation of Settlement." Costle is therefore inapposite. See also United States v. Oregon, 913 F.2d 576, 588 (9th Cir.1990) (upholding denial of intervention where party sought to intervene not to participate in "remedial phase" of litigation but to attack court-approved fish management plan), cert. denied, 111 S.Ct. 2889 (1991).[5]
 
 
 17
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although the district court denied permissive intervention on timeliness grounds, the court specifically left open the question whether AHCA's motion to intervene of right was timely. Nevertheless, at oral argument both AHCA and Sarrassat urged us to resolve all issues concerning whether AHCA was entitled to intervene. See also City of Las Vegas v. Clark County, 755 F.2d 697, 701 (9th Cir.1985) (court of appeals may affirm district court on any ground fairly supported by the record)
 
 
 [2]
 At oral argument, appellees' counsel asserted the prospective intervenors
 knew about the lawsuit sometime shortly after the actual complaint had been filed back in 1988. Yet, although they knew about the lawsuit--they had knowledge, actual knowledge, of the lawsuit--they waited until after the judgment had been entered to file their motion to intervene.... [T]he fact that they come into court now stating that they did not know about the lawsuit or, more specifically, didn't know about the ramifications or what the lawsuit--what the result of the actual lawsuit would be, simply is not good enough.
 
 
 [3]
 At oral argument, counsel for AHCA continued to evade the issue whether it knew and inquired about the lawsuit at anytime shortly after its inception:
 COURT: Does the record reflect why your client did not intervene earlier?
 COUNSEL: Your Honor, I believe it does. The earliest that our client and its members became aware of these instructions which are contested was approximately May of 1989, when they were issued by the federal defendant. Prior to that time, the case, I believe, had been filed in March of '88. There was not a trial or hearing on the merits. There was not a notice of certification of this case as a class action. So I think that the earliest time that we were aware was in May of 1989.... So I think we did act at the earliest stage that we had an indication of what policy changes were to come out of this settlement agreement.
 (Emphasis added.) In light of the foregoing, we believe that when AHCA states it "did not receive notice of the suit prior to publication of the instructions implementing the settlement," Brief of Appellant-Intervenor at 25, it means only that it received no formal notice from the parties.
 
 
 [4]
 Indeed, AHCA indicated to the magistrate judge that it did not believe "the federal government, as a defendant in this matter, is sufficiently representing [AHCA's] interests." AHCA also stated that it did not "believe that the plaintiff's interest in this matter is in accord with what the interests are of the [AHCA] and the nursing homes that it represents."
 
 
 [5]
 We express no opinion on AHCA's action against the federal defendant pending in the District of Columbia. See Air California, 799 F.2d at 538-39 (unsuccessful applicant for intervention not precluded from taking other action). In particular, we express no opinion on AHCA's standing to bring a separate action