968 F.2d 1218
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
In The Matter of CONTINENTAL STEEL CORPORATION, formerly
known as Penn Dixie Steel Corporation, formerly
known as Penn Dixie Industries,
Incorporated, Debtor.
Appeal of Phil KAUBLE, Gerald E. Ailor, Donald E. Anderson, et al.
 No. 91-3368.
 United States Court of Appeals, Seventh Circuit.
 Argued April 7, 1992.
Decided July 10, 1992.
Rehearing and Rehearing En Banc
Denied Aug. 7, 1992.
 
 1
 Before FLAUM and MANION, Circuit Judges, and SHADUR, District Judge*.
 
 ORDER
 
 2
 The bankruptcy court approved a settlement agreement in Adversary Proceeding No. 86-141 on March 10, 1988. On November 8, 1990, attorney Mark Garringer filed a notice of appearance on behalf of the appellants and a motion to compel discovery in the United States Bankruptcy Court for the Southern District of Indiana on behalf of the appellants in Adversary Proceeding No. 86-141. The bankruptcy court entered an order striking the notice of appearance and the motion to compel discovery, and the district court affirmed the order. We affirm the district court's order.
 
 I. Background
 
 3
 The dispute at issue arises from Adversary Proceeding No. 86-141. Some background on the proceedings will place the dispute in context.
 
 
 4
 The appellants, former employees of Continental Steel Corporation ("Continental"), are participants in the Continental Steel Corporation 1950 Employee Pension Plan A ("Plan A"). The Pension Benefit Guaranty Corporation ("PBGC") is a wholly owned United States government corporation that administers and enforces the pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461. On February 12, 1986, PBGC issued a Notice of Determination to Continental, Plan A's administrator. The Notice stated that PBGC had determined that Plan A had not met the minimum funding standard of section 412 of the Internal Revenue Code, and that the possible future loss to the PBGC with respect to Plan A could be expected to increase unreasonably if Plan A was not terminated. The Notice further stated that it was necessary to appoint PBGC as statutory trustee of Plan A to avoid any unreasonable deterioration of the financial condition of the Plan. Finally, the Notice indicated that the PBGC intended to apply to the United States District Court for an order appointing the PBGC statutory trustee of Plan A and setting February 14, 1986 as the date of Plan termination. On February 12, 1986, PBGC sent copies of the Notice to Continental, to United Steelworkers of America Locals 1054 and 3601 ("Union") and to their counsel.
 
 
 5
 The PBGC filed the application to terminate Plan A in the district court pursuant to 29 U.S.C. § 1342. To notify participants, a copy of the Notice was published in two major newspapers on February 17 and 18, 1986. The district court referred the matter to the bankruptcy court where it was designated an Adversary Proceeding No. 86-141 within Continental's bankruptcy proceedings.
 
 
 6
 On February 19, 1986, the Union moved to intervene in Adversary Proceeding No. 86-141 to object to PBGC's application to terminate Plan A and to the proposed date of termination. The Union asserted that it continued to be the "official bargaining agent for the employees who have rights in and are beneficiaries of [the Plan]." The appellants were Union members and were represented by the Union.
 
 
 7
 After converting Continental's bankruptcy from Chapter 11 to Chapter 7, the bankruptcy court approved the termination of Plan A and appointed PBGC as statutory trustee. The bankruptcy court did not resolve the date of the Plan's termination. Therefore, the Union, the PBGC and the bankruptcy trustee entered negotiations over the date.
 
 
 8
 On February 1, 1988, over 200 participants (including most of the appellants) moved to intervene in Adversary Proceeding No. 86-141. On February 23, 1988, the Union, the bankruptcy trustee and PBGC entered into a settlement agreement setting February 25, 1986 as the date of termination of Plan A. On March 10, 1988, the bankruptcy court held a hearing to review the settlement and approved it. The participants who had moved to intervene were represented by counsel at the hearing. The bankruptcy court found that the participants withdrew their motion to intervene although no withdrawal appears in the record.
 
 
 9
 Although the bankruptcy court approved the settlement agreement, it did not enter an order dismissing the case. On November 8, 1990, Mark Garringer entered a notice of appearance on behalf of 128 participants (100 of whom were the same as the participants who had moved to intervene in 1988) and filed the motion to compel discovery which created the issue in this appeal. The bankruptcy court struck both the notice and the motion after reasoning that the appellants were not parties and could not become parties without moving to intervene under Bankruptcy Rule 7024. Without being parties, the appellants lacked standing to compel discovery. The district court affirmed the bankruptcy court. The district court reasoned that if the appellants were represented by the Union, then they had already intervened and their interests were represented in the proceeding. Alternatively, if the appellants were not represented by the Union and the notice of appearance were construed as a motion to intervene, a motion to intervene two and one-half years after settlement would be untimely and not permitted by Bankruptcy Rule 7024. Even if the February 1, 1988 motion to intervene on behalf of 100 of the appellants had not been withdrawn at the hearing on March 10, 1988, the district court determined that those 100 appellants had waived any objection to the settlement agreement because their counsel had failed to speak against it.
 
 II. Analysis
 
 10
 Although the appellants include arguments in their brief regarding the March 10, 1988 settlement agreement, they have timely appealed only the district court's September 23, 1991 order affirming the bankruptcy court's November 14, 1990 order striking Garringer's notice of appearance and motion to compel discovery. Fed.R.App.P. 4(a)(1). Accordingly, we have no jurisdiction to consider the other matters raised by the appellants. Cf. Matter of Schultz Mfg. Fabricating Co., 956 F.2d 686, 689 (7th Cir.1992) (district court had no jurisdiction to review the bankruptcy court's orders that were not timely appealed).
 
 
 11
 In its November 14, 1991 order, the bankruptcy court struck Mark Garringer's notice of appearance because either the appellants' interests have been represented, or, alternatively, the appellants were not proper parties to Adversary Proceeding 86-141. We review the bankruptcy court's findings of fact for clear error. We review its legal conclusions de novo. In re Matter of Love, 957 F.2d 1350, 1354 (7th Cir.1992).
 
 
 12
 Under the Southern District of Indiana Local Rule 2, only a "party" can have counsel file a notice of appearance. See S.D.Ind.Local Rule 2(a) (1983). Likewise, under Fed.R.Civ.P. 37, only a "party" can file a motion to compel discovery. See Fed.R.Civ.P. 37(a). The appellants are not and have never claimed to be named parties to the original Adverse Proceeding 86-141. They can therefore be parties only if they have properly intervened under Bankruptcy Rule 7024 which incorporates Fed.R.Civ.P. 24.
 
 
 13
 If the appellants were represented by the Union, which properly intervened in 1986, then their interests already have been represented in the settlement agreement, and the appellants cannot come to the court now with new counsel and object to the settlement agreement. Assuming that the appellants are correct in arguing that the Union did not represent their interests, however, they still cannot have counsel file a notice of appearance. The only conceivable basis for appellants to file a notice of appearance is if the motion to intervene, filed by some of the appellants on February 1, 1988 somehow preserved a basis for filing the later notice of appearance. If the February 1, 1988 motion to intervene was withdrawn, however, then the question becomes whether the notice of appearance can be construed as a motion to intervene, and if so, whether that motion to intervene would be timely.
 
 
 14
 The bankruptcy court found that the appellants' February 1, 1988 motion to intervene was withdrawn on March 10, 1988. Since we review the bankruptcy court's findings of fact for clear error, we will not reverse those findings unless we are "left with the definite and firm conviction that a mistake has been committed." In re Matter of Love, 957 F.2d at 1354. Although the withdrawal does not appear on the record, the appellants have not offered affidavits from the counsel who filed the February 1, 1988 motion or any other evidence to contradict the bankruptcy court's finding. We therefore cannot conclude that finding the motion to intervene was withdrawn is clearly erroneous. Since the February 1, 1988 motion to intervene was withdrawn, the appellants cannot rely on it to establish their status as parties to Adversary Proceeding 86-141.
 
 
 15
 Even though the appellants never filed a proper motion to intervene, both the bankruptcy and district courts considered whether the appellants could intervene now. Even if a notice of appearance could substitute for a motion to intervene under Fed.R.Civ.P. 24, such a motion would be untimely. In determining whether a motion to intervene is untimely, the court would consider (1) the length of time the intervenor knew or should have known of his or her interest in this case, (2) the prejudice to the original party caused by the delay, (3) the resulting prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances. Ragsdale v. Turnock, 941 F.2d 501, 504 (7th Cir.1991), cert. denied sub nom. Murphy v. Ragsdale, 112 S.Ct. 879 (1992) (citation omitted). The appellants, who indisputably knew of their interest in the case long before the settlement agreement was signed, would have difficulty in persuading the court that under these factors intervention should be granted. Cf. Ragsdale v. Turnock, 941 F.2d at 504-505 (granting motion to intervene after settlement agreement would be highly prejudicial); County of Orange v. Air California, 799 F.2d 535, 537-38 (9th Cir.1986), cert. denied sub nom. City of Irvine v. Orange County, 480 U.S. 946 (1987) (district court did not abuse its discretion in denying, as untimely, city's motion to intervene as of right where city's motion was made only after settlement had been reached between all the parties after five years of litigation). On appeal, any denial of a motion to intervene as untimely would be reviewed only for abuse of discretion. Schultz v. Connery, 863 F.2d 551, 553 (7th Cir.1988).
 
 
 16
 In short, even if the appellants were not represented by the Union, they cannot have counsel file a notice of appearance or file a motion to compel discovery because they have no valid basis for filing a motion to intervene to become a party to Adversary Proceeding 86-141.
 
 
 17
 As a final matter, we sanction the appellants' counsel pursuant to Fed.R.App.P. 38. Rule 38 sanctions are appropriate if: (1) the appeal is frivolous and (2) sanctions are appropriate. A-Abart Elec. Supply, Inc. v. Emerson Elec. Co., 956 F.2d 1399, 1406 (7th Cir.1992). We have stated before that an appeal is frivolous when the result is "foreordained by the lack of substance to the appellant[s'] arguments." Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 938 (7th Cir.1989) (en banc). We also have stated that sanctions are appropriate when an appeal is "prosecuted with no reasonable hope of altering the district court's judgment and for purposes of delay, harassment or sheer obstinacy." A-Abart Elec. Supply, 956 F.2d at 1407. Furthermore, "[t]he standard depends on the work product: neither the lawyer's state of mind nor the preparation behind the appeal matter." Id. at 939.
 
 
 18
 Applying the standards set out above, sanctions are appropriate in this case. As mentioned above, the appellants' brief and oral argument largely failed to focus on the issues raised by their appeal. Rather than responding to the reasoning of the bankruptcy court's order striking Garringer's notice of appearance and motion to compel discovery or refuting the district court's analysis, the brief concentrated on issues surrounding the approval of the settlement agreement. The settlement agreement, however, was not timely appealed and was therefore not at issue. With unresponsive and irrelevant arguments, the appellants could have had no expectation of altering the judgment. Cf. Williams v. Leach, 938 F.2d 769, 775 (7th Cir.1991).
 
 
 19
 In short, Attorney Garringer's performance fell far short of the level of advocacy demanded by this court. Accordingly, damages assessed against appellants' counsel are appropriate under Rule 38. See A-Abart Elec. Supply, 956 F.2d at 1407 (sanctions may be imposed against either an appellant or the appellant's attorney). Appellants' counsel shall file a brief within fifteen days of this decision explaining why he should not pay the appellees' costs for this appeal. See Circuit Rule 38. During the same time period, the appellees should provide this court with a statement of their costs and fees.
 
 
 20
 For the reasons outlined above, we AFFIRM WITH SANCTIONS.
 
 
 
 *
 Hon. Milton I. Shadur, District Judge for the Northern District of Illinois, is sitting by designation