29 F.3d 633
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LATIN AMERICAN LAW ENFORCEMENT ASSOCIATION; John W. Hunter,
Korean American Law Enforcement Association;
Plaintiffs-Appellees,
v.
CITY OF LOS ANGELES, Defendant-Appellee,
v.
Lieutenant Richard J.M. Dyer; Sergeant Daniel E. Pugel;
Sergeant Douglas S. Abney, Proposed Intervenors-Appellants.
 Nos. 93-55066, 93-55129.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 9, 1994.*
Decided July 21, 1994.
 
 Before: D.W. NELSON, BEEZER, and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Intervenors and Appellants, Richard J.M. Dyer, Daniel E. Pugel, and Douglas S. Abney, three non-minority officers of the Los Angeles Police Department ("LAPD"), appeal the District Court's denial of their motion to intervene as of right 50 days after entry of a final judgment approving a consent decree between the City of Los Angeles and representatives of three groups of minority police officers. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 
 3
 The underlying employment discrimination class action lawsuit was initiated on September 12, 1988, when the Latin American Law Enforcement Association filed an administrative complaint alleging employment discrimination against minority LAPD officers. This action was followed on October 11, 1988, by the filing of a similar complaint by John W. Hunter, an African-American LAPD officer, and the California State Department of Fair Employment and Housing. The complaints alleged that minority LAPD officers discriminatorily were denied promotions, assignments to mobility-enhancing positions, and paygrade advancements. A settlement in the form of a proposed consent decree was reached in late 1991, and was approved by the City Council on November 5, 1991.
 
 
 4
 The proposed decree included an affirmative action plan providing goals and special programs designed to address the underrepresentation of African American, Hispanic, and Asian American sworn officers in promotions and other forms of advancement within the LAPD. The provisions of the decree received prominent media coverage. On March 27, 1992, the minority officers filed two complaints in federal district court against the City together with the proposed decree. The court consolidated the cases, entered an order certifying the class and authorizing notice of the proposed settlement to the class, and set a fairness hearing for July 13, 1992. At the fairness hearing, the three white officers seeking to intervene here submitted a lengthy Amicus Curiae brief opposing the decree. The district court continued the hearing to allow the parties to respond to the brief.
 
 
 5
 At the continued hearing on August 10, 1992, counsel for the white officers made extensive oral arguments against confirmation of the decree. On August 27, 1992, the district court entered a final order approving the decree. The court, however, amended the terms of the decree in response to criticism from the white officers, changing it from a fixed term of 12 to 15 years to a maximum term of 15 years subject to the right of the City to move at any time to be relieved of its obligations upon a showing that the objectives of the decree had been satisfied. The time to appeal the final order expired on September 26, 1992.
 
 
 6
 On October 16, 1992, 50 days after entry of judgment, and 20 days after the appeal period had expired, the white officers filed their motion to intervene as of right. The district court denied the motion as untimely.
 
 ANALYSIS
 
 7
 We review for abuse of discretion a district court determination that a motion for intervention as of right is untimely. NAACP v. New York, 413 U.S. 345, 366 (1973); see also United States ex rel. McGough v. Covington Technologies, 967 F.2d 1391, 1394 (9th Cir.1992). Post-judgment motions to intervene are "generally disfavored," Covington, 967 F.2d at 1395, and are "reserved for exceptional cases," Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 659 (9th Cir.), cert. denied, 439 U.S. 837 (1978). Even where a post-judgment motion is otherwise appropriate, the general rule is that a post-judgment motion to intervene is timely only if filed prior to the expiration of the appeal period. See United Airlines, Inc. v. McDonald, 432 U.S. 385, 396 (1977) (finding motion to intervene timely when filed "within the time period in which the named plaintiffs could have taken an appeal"); Covington, 967 F.2d at 1394 (motion is timely if " 'filed within the time allowed for the filing of an appeal' ") (quoting Yniguez v. Arizona, 939 F.2d 727, 734 (9th Cir.1991)).
 
 
 8
 "In determining whether a motion to intervene is timely, we evaluate three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." Covington, 967 F.2d at 1394. All of these factors weigh heavily against Appellants.
 
 
 9
 As indicated above, the fact that the proposed intervenors did not bring their motion until after entry of judgment weighs against a finding of timeliness. The fact that they waited until after the time for appeal had passed is all but fatal.[1] Cf. Jenkins v. Missouri, 967 F.2d 1245, 1247 (8th Cir.) (finding no jurisdiction where the proposed intervenors filed an appeal to a final order approving a consent decree prior to the expiration of the appeal period, but only formally moved to intervene after they filed their appeal and after the appeal period had expired), cert. denied, 113 S.Ct. 811 (1992).
 
 
 10
 The prejudice inquiry also cuts against the proposed intervenors. The white officers moved to intervene over three years after the underlying proceedings began, see County of Orange v. Air California, 799 F.2d 535, 538 (9th Cir.1986) (finding that serious prejudice would result where intervention would undo settlement reached after five years of proceedings), cert. denied, 480 U.S. 946 (1987), and at a time when, as Appellants concede, the decree already was being implemented by the City, see Alaniz, 572 F.2d at 659 (finding that serious prejudice would result where "the decree is already being fulfilled"). Moreover, the decree, which expressly was designed to redress the underrepresentation of minority officers in positions of authority within the LAPD, is directed at what we previously have characterized as "long-standing inequities." See Air California, 799 F.2d at 538 (emphasizing " 'the seriousness of the prejudice which results when relief from long-standing inequities is delayed' ") (quoting Alaniz, 572 F.2d at 658). The above considerations unambiguously establish that reopening the negotiations would result in serious prejudice to the parties.
 
 
 11
 The final consideration, the reason for and length of the delay, also undermines rather than supports Appellants' claim. As the district court explained:
 
 
 12
 The proposed intervenors had notice of this action well before the date initially set for approval of the class settlement. They appeared at that hearing and were granted amici status, and permitted to file a brief in opposition to the proposed settlement and the hearing was continued so that their objections could be considered and responded to by the parties. That amici and proposed intervenors were well acquainted with the issues is demonstrated by the lengthy briefs they filed....
 
 
 13
 The final Judgment and Order Approving Consent Decree and Agreement was entered ... more than two months ago. Proposed intervenors were aware of this because they were present at the final hearing when the consent decree was approved. Having waited this long, until after the time to appeal from the judgment has long expired, the proposed complaint in intervention is nothing less than a bald collateral attack on the judgment. The motion for intervention is not timely.
 
 
 14
 Significantly, Appellants admit that they realized "how inadequately the City was representing their interests" no later than the August 10 fairness hearing, and the only proposed intervenor to file a declaration in support of the motion, Daniel E. Pugel, admitted that he learned of the decree when he read a summary of its contents posted on his station house bulletin board in May 1992. Appellants thus concede that they were aware of the risk that the settlement would be adverse to their interests well before the entry of judgment.
 
 
 15
 Appellants argue, however, that this case presents extraordinary circumstances that warrant excusing their delay in bringing their motion. They argue that the "unique circumstances of this case which militate towards granting the intervenors motion is that they are an unrepresented group of officers who comprise over 50% of the Police Force." This consideration, however, provides no explanation for Appellants tardiness in filing their motion. Appellants also contend that this case is unique because the terms of the 1991 amendments to the Civil Rights Act may preclude them from launching a successful collateral attack on the decree. Again, however, the existence of the 1991 amendments cannot excuse the Appellants' tardiness in making their motion because the amendments were effective over nine months before the entry of judgment in this case. In sum, Appellants have offered no substantive explanation for their delay in moving to intervene.
 
 
 16
 Accordingly, we conclude that none of the factors relevant to a determination of timeliness weigh in favor of Appellants, let alone warrant a finding that the district court abused its discretion. Because we affirm the district court's denial of the motion to intervene as untimely, we need not dispose of the other issues addressed by the parties.[2] We express no opinion on the merits of either the claims of the minority plaintiffs or those of the white officers. We note, however, that although a consent decree "embodies an agreement of the parties and in some respects is contractual in nature," Rufo v. Inmates of Suffolk County Jail, 112 S.Ct. 748, 757 (1992), a party may move to modify the terms of the decree if it establishes that a significant change in facts or law warrants a revision, id. at 760, and a court may allow intervenors to participate in such a proceeding in appropriate circumstances. See, e.g., Ensley Branch, NAACP v. Seibels, 20 F.3d 1489, 1518-19 (11th Cir.1994). We also note that a consent decree does not serve to collaterally bar future claims of discrimination which neither challenge the terms of the decree nor seek to modify the decree. O'Shea v. City of San Francisco, 966 F.2d 503, 505 (9th Cir.1992).
 
 ATTORNEY'S FEES
 
 17
 The plaintiffs-appellees request an award of reasonable attorney fees, costs and expenses for this appeal pursuant to 42 U.S.C. Sec. 2000e-5(k). "[A]ttorney fees should be awarded to a Title VII prevailing party against an intervenor only where the intervenor's actions were 'frivolous, unreasonable, or without foundation.' " Davis v. City and County of San Francisco, 890 F.2d 1438, 1452 (9th Cir.1989) (quoting Independent Federation of Flight Attendants v. Zipes, 109 S.Ct. 2732, 2736 (1989)). We fully agree that an award of attorney fees against third-party intervenors should be considered only in rare circumstances because such intervenors, unlike employers, are not responsible for the discrimination being addressed in the settlement. We believe, however, that the present appeal falls squarely within the ambit of the exception to the general rule set forth by the Supreme Court in Zipes.
 
 
 18
 The reason that we find the present appeal without foundation is that, although Appellants are challenging a denial based on untimeliness, they have offered no meaningful explanation for their failure to bring their motion promptly after they learned that the settlement likely would be adverse to their interests. Appellants not only participated in the litigation as amici months before the settlement agreement was approved, but also the proposed decree was amended prior to final judgment to reflect one of their concerns. They clearly had notice of the proceedings and an opportunity to participate. Most significantly, Appellants concede that they were aware that the City was not adequately representing their interests weeks before the entry of final judgment, yet they offer no justification whatsoever for having waited an additional two months, allowing the settlement order to become appeal proof, before bringing their motion.
 
 
 19
 This case is thus readily distinguishable from both Davis and Zipes, cited above. Here, unlike in those cases, Appellants never established their status as defendants in intervention, and they are not appealing a judgment on the merits. On the contrary, they are attempting to surmount an unambiguous determination that their motion was untimely without any new arguments that could support their position. Given these facts and the clearly established rule that post-judgment intervention is disfavored, and that motions to intervene must be brought promptly after entry of final judgment, we conclude that this appeal was wholly without merit. Under these circumstances, we see no reason why the minority officers, who did nothing to discourage Appellants from intervening in the litigation in a timely fashion, should have to shoulder the expense of defending against Appellants' baseless appeal of the district court's denial of their motion.
 
 
 20
 Accordingly, we conclude that an award of attorney fees and costs on appeal is appropriate. In their fee application, plaintiffs-appellees should follow the procedures and provide the documentation as required by Rule 39-1 of the Ninth Circuit Rules.
 
 CONCLUSION
 
 21
 For the reasons described above, the district court's denial of Appellant's motion to intervene is affirmed, and Appellees' motion for attorney fees on appeal is granted.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellants argue that although they filed their motion on October 16, 1992, 50 days after entry of judgment, they lodged their motion on October 9, 1992, and it was only a calendaring error that led to the one week delay. The one week difference, however, is of little moment here because, even if the motion had been filed on October 9, it still would have been filed nearly two weeks after the appeal period had expired
 
 
 [2]
 Appellants ask us to rule, in the alternative, that they are entitled to collaterally challenge the consent decree at a later time. We lack jurisdiction to consider the merits of a prospective collateral attack