**EMPIRE BLUE CROSS AND BLUE SHIELD and Blue Cross and Blue Shield of Connecticut, Inc., et al., Plaintiff,**

v.

**JANET GREESON'S A PLACE FOR US, INC.; Bellflower Doctors Hospital; Los Angeles Doctors Corporation; Janet Greeson; Barry Smolev; Suncrest Hospital of Orange; Hollywood Community Hospital at Van Nuys; Princeton Hospital, Defendants–Appellees.**

**Aetna Life Insurance Company, Applicant in intervention-Appellant.**

No. 94–55681.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1995.

Decided Aug. 10, 1995.

---

Marvin Wexler and Robert D. Helfand, Kornstein, Veisz & Wexler, New York City, for applicant in intervention-appellant.

James M. Harris, Sidley & Austin, Los Angeles, CA, for defendant-appellee Hollywood Community Hosp. of Van Nuys.

Derek S. Goulding, Acker, Kowalick & Whipple, Los Angeles, CA, for defendants-appellees Janet Greeson's A Place for Us.

James P. Herzog and David R. Fisher, Herzog, Fisher, Flame & Grayson, Beverly Hills, CA, for defendants-appellees.

Before: FLETCHER, WIGGINS, and FERNANDEZ, Circuit Judges.

WIGGINS, Circuit Judge:

Aetna Life Insurance Co. ("Aetna") appeals a district court's denial of its motion to intervene in an earlier, settled civil law suit. Aetna requested that the district court modify protective orders it had previously issued, which sealed the documents produced during the lengthy discovery in the earlier action. We affirm.

## BACKGROUND

In August 1992, Empire Blue Cross and Blue Shield, et al. ("Blue Cross"), filed a federal complaint against Janet Greeson's A Place For Us, Inc. ("APFU"), and twelve other defendants, including various hospital and physician corporations.[1] The suit alleged that APFU had fraudulently billed millions of dollars to Blue Cross for providing psychiatric care, when in truth APFU operated weight-loss clinics that were not covered by the relevant policies. After a very lengthy discovery, but before trial, the parties settled the suit. As part of the settlement, the district court executed a protective order (in addition to, and much more restrictive than, a protective order it had executed early on), sealing the discovery that had already taken place.[2]

---

1. For simplicity's sake, we refer to the Appellees as APFU, the primary named defendant in the underlying action. The briefs in this case, however, were submitted by various hospital defendants opposing modification of the protective orders.

2. In a related case before the panel, a grand jury subpoenaed Blue Cross' law firm, requesting copies of all documents produced during discovery in the earlier proceeding. APFU moved to intervene in order to file a motion to quash the subpoena, arguing against modification of the protective orders. The district court granted the motion to intervene, but denied the motion to quash the subpoena. We affirmed that decision, enforcing the grand jury subpoena. That decision has no bearing on the instant case, however. Our analysis in that case rested heavily upon the traditional role of the grand jury, and other factors that are obviously not present in this (civil) action.

Aetna had been aware of the suit against APFU since October 1992. Aetna had repeatedly been in contact with Blue Cross attorney William Von Behren, who kept Aetna's attorneys apprised of the status of the case and gave them copies of non-confidential documents. On March 11, 1994, the same day the parties to the Blue Cross lawsuit reached their oral settlement agreement (a material part of which was that all discovery would be sealed pursuant to a protective order), Aetna filed its suit against APFU, based on the same causes of action as the Blue Cross suit. Three days later, on March 14, the district court dismissed the Blue Cross suit, and on March 16, it executed the agreed-upon protective order.

In an attempt to gain access to the voluminous documents that were produced during the Blue Cross discovery, Aetna subsequently filed a motion to intervene in that earlier, settled action. Aetna requested that the district court modify its protective orders to allow Aetna to obtain copies of the discovery. The district court conducted a hearing on April 25, 1994, and denied Aetna's motion. Aetna appeals.

## DISCUSSION

I. *A District Court Has Discretion Whether or Not to Modify Protective Orders.*

■ Aetna argues that the district court does not have broad discretion in deciding whether to modify protective orders. Aetna's argument is not entirely correct. Although Aetna is correct that a motion to intervene for the purpose of modifying a protective order should often be granted, *see Beckman Indus. v. International Ins. Co.,* 966 F.2d 470, 475 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992), Aetna is wrong to suggest that the district court therefore lacks discretion in the modification decision. As the *Beckman* court itself stated: "The court reviews the grant of a protective order for abuse of discretion, as well as a request to modify a protective order." *Id.* at 472 (citation omitted). Some circuits even suggest that district courts have more discretion in this area than in other areas. *See, e.g., Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 790 (1st Cir.1988)

("Control of pretrial discovery, including the entry or modification of a protective order, is a matter falling *peculiarly within the discretion* of the district court.") (emphasis added), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *Wilk v. AMA,* 635 F.2d 1295, 1299 (7th Cir.1981) (if the district court finds prejudice to the party opposing modification (as in this case), it then has "broad discretion" to decide whether to modify).

II. *Limited–Purpose Motions to Intervene Must be Timely.*

■ The motion to intervene in the present case is a limited-purpose motion. That is, Aetna does not wish to intervene to substantively attack the underlying settlement, but only to gain access to the documents sealed thereby. This circuit has not yet decided whether such motions to intervene for ancillary purposes must be timely. We hold that they must.

A. *Comparison to Substantive Motions to Intervene*

■ It is well settled in this circuit that motions to intervene for substantive reasons—to revisit original settlements—must be timely. *County of Orange v. Air California,* 799 F.2d 535, 537 (9th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987); *Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir.), *cert. denied,* 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). When adjudging the timeliness of substantive motions to intervene, this circuit looks at: 1) the stage of the proceeding at which an applicant seeks to intervene; 2) the prejudice to other parties; and 3) the reason for and length of the delay. *Air California,* 799 F.2d at 537; *Alaniz,* 572 F.2d 657 at 659. This test, as well as the *Air California* court's discussion, reveal the rationale underlying this requirement. That is, parties who delay in attempting to intervene, and who end up doing so only after the original parties have reached an acceptable settlement, should not be able, without good reason, to intervene when their intervention may well cause substantial prejudice to the original parties.

■ Applying the three-part test from *Air California* to the present case demonstrates that this rationale is implicated in the context of limited-purpose motions to intervene, as well. All three factors from the *Air California* test are pertinent in the present case, and all three weigh against Aetna.

First, Aetna did not seek to intervene until the day of the Blue Cross–APFU settlement, despite overwhelming evidence that Aetna knew of the litigation since its inception almost two years earlier. Moreover, Aetna's emphasis on the fact that it filed its motion three days before the district court made the parties' agreement official, and five days before the court executed the agreed-upon second protective order, is specifically discounted by the *Air California* decision: "Although Irvine did intervene before the Stipulated Judgment was officially approved by the district court, the fact that Irvine waited until after all the parties had come to an agreement after five years of litigation should nevertheless weigh heavily against Irvine." 799 F.2d at 538.

Second, the district judge found that modification could prejudice the parties in two ways. The first potential prejudice to the parties is the possibility that modification would "unravel" the original settlement. This finding is supported by the acknowledgment of all the original parties that the second protective order was a "substantial part of the consideration for the settlement agreement." It is also supported by the declaration of the retired state judge who oversaw the discovery process. He advised the district court:

> Monetary issues were not the only concerns of the parties to this litigation. The parties also desired to make certain that

their long fought battle was kept private and that other third parties including the media, the insureds and other insurance carriers not obtain access to discovery produced during the course of this litigation. As a result, the parties agreed to the terms of a protective order which constituted a material part of the consideration in the settlement of this litigation.... Had the parties not agreed to the terms of a protective order, I doubt whether the litigation would have settled. To modify or alter the protective order would, in effect, unravel a material term to a settlement in which all of the parties, and myself, worked many long hours to obtain.

The second potential prejudice to the parties that could result from modification of the protective orders involves pragmatic concerns. The district court noted that "serious questions of patient confidentiality" are implicated by Aetna's motion. The parties also note the great expense they would incur in reviewing the thousands of documents requested by Aetna, in order to safeguard not only patient confidentiality, but also attorney-client privileges.[3] We believe these concerns are well founded.

As to the third *Air California* factor, Aetna has provided little, if any, excuse for its delay in becoming involved in this litigation. It has forwarded no affidavits or any other evidence in explanation. Aetna's allegations that it was having trouble determining all the possible claims it had are vague and unconvincing. The district court found that Aetna laid back purposefully, hoping to freeload upon the massive amounts of time and money the other parties expended in pursuing discovery. That finding is well supported.[4]

---

3. Appellees also argue that other costs, such as duplicate discovery, will accrue because of Aetna's failure to intervene promptly. Aetna correctly responds, however, that these extra costs will be incurred regardless of the modification ruling. That is, more discovery will be necessary because of Aetna's suit, not because of Aetna's proposed modification.

4. William Von Behren, Blue Cross' lead attorney in the underlying action, revealed the following in his deposition:

—He saw Aetna representatives' names on an attendee list from a meeting on or about June

1992, concerning an investigation into the APFU program.

—He had numerous discussions with two attorneys from Aetna, Larry Fox and Marvin Wexler, starting in late October 1992.

—Early on, he had a conference call with both Aetna attorneys, discussing Blue Cross' intended actions in pursuing the litigation, and whether Aetna intended to file an action.

—In October 1992, he sent copies of the Blue Cross complaint, and preliminary injunction materials, to an investigator/attorney at Aetna.

In sum, precisely the dangers that the *Air California* court wished to avoid would result if we were to override the protective orders in this case for Aetna's purposes. We would be jeopardizing a settlement, to the potential prejudice of all the parties concerned in the underlying action, for the sake of a proposed intervenor who waited until the original parties had already reached an agreement to settle, and who has posited no good reason for doing so. Because this case demonstrates that all of the concerns expressed by this circuit in the substantive-intervention context also apply in the limited-purpose context, we believe that incorporating the timeliness requirement of the former into the latter is appropriate.

### B. Expediting Civil Litigation

Aetna's behavior in this case also demonstrates that Fed.R.Civ.P. 1's goal of expediting the civil litigation process will actually be *enhanced* by imposing a timeliness requirement for even limited-purpose motions to modify protective orders. That is, although in the present case Aetna will have to conduct its own, largely duplicative discovery, other would-be freeloaders will be deterred from trying to out-maneuver, or out-wait, their potential coplaintiffs or codefendants, and will be encouraged to join actions during their earlier stages. This can only help the civil process operate more efficiently in the long run.[5]

### III. Aetna's Motion is Untimely.

For the reasons described above, we hold that Aetna's motion to intervene is untimely. As the district court succinctly stated: "The evidence is clear that Aetna has laid back purposefully and sought to save itself monetary contributions to the cost of discovery and now unfairly seeks to get the advantage of that discovery at little cost to itself. This court will not allow that to happen." Per the above discussion, it should be clear that we will not, either.

### CONCLUSION

We affirm the district court's denial of Aetna's motion to intervene, on the ground that it was untimely. We echo the following language of the First Circuit: "[I]t seems inequitable to allow a latecomer, who fiddled while Rome burned, to collect a share of the

---

—During many conversations in early 1993, he discussed with Mr. Fox the status of the litigation and new developments.

—In the Spring of 1993, Mr. Fox met with a Blue Cross executive, Mr. Richling, to discuss the status of the litigation, whether Aetna was going to file an action, and if so, whether Blue Cross and Aetna could enter into a joint prosecution arrangement.

—Von Behren at the very least implied, and probably stated, since "day one of [his] conversations with Aetna," that Blue Cross would appreciate it if Aetna joined in the litigation.

—In approximately 20–25% of his telephone conversations with Aetna counsel, Von Behren was asked about the status of settlement discussions.

—In late February or early March 1994, Von Behren informed Aetna's counsel that meaningful settlement efforts were underway.

The district court also noted that Aetna had been invited to join a settlement conference on or about February 18, 1994, attended by all of the plaintiffs and defendants, but that Aetna declined.

**5.** Three other circuits have addressed the question before us. The Tenth Circuit stated that while a motion to intervene on the merits of an earlier suit must be timely, a motion to intervene for the limited purpose of modifying a protective order need not. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (1990), *cert. denied*, 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). The court based this distinction on its belief that "Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties, a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose." *Id.* This same belief—that limited-purpose motions to intervene do not potentially prejudice the original parties—also appeared to underlie the Third Circuit's reluctance to apply a timeliness requirement to limited-purpose motions to intervene. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 780 n. 9 (3d Cir.1994). As discussed above, however, the facts of the present case contradict this belief.

In contrast to the Tenth Circuit, the First Circuit, in a case similar to the instant one, held that limited-purpose motions to intervene must be timely. *Banco Popular v. Greenblatt*, 964 F.2d 1227, 1230–34 (1992). "[T]imeliness stands as a sentinel at the gates whenever intervention is requested and opposed." *Id.* at 1230. We agree with the First Circuit.

fire insurance." *Banco Popular,* 964 F.2d at 1234.

AFFIRMED.