Sidney Gary **PEACOCK**, Jr., Plaintiff,

v.

**BANK OF AMERICA CORPORATION, et al., Defendants.**

**No.  6:99–CV–1590–Orl–31C.**

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 19, 2000.

**1324**

Patricia R. Sigman, Sigman & Sigman, P.A., Altamonte Springs, FL, William D. Frumkin, Sapir & Frumkin, LLP, White Plains, NY, for plaintiff.

Robert T. Kofman, Ellen I. Cho, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, FL, for defendants.

### ORDER

PRESNELL, District Judge.

This cause came on for consideration of Defendant's Objections to the Report and Recommendation of the Magistrate Judge (Doc. 75), and Plaintiff's Memorandum in response thereto (Doc. 82). Having reviewed de novo the Report and Recommendation of the Magistrate Judge (Doc. 75) and the briefs filed by the parties, the Court finds that it is bound by law of the case to overrule Defendant's objections. *See* Order dated May 23, 2000 (Doc. 40). *Williams v. C.I.R.*, 1 F.3d 502 (7th Cir. 1993). It is, therefore,

**ORDERED** that the Report and Recommendation of the Magistrate Judge is CONFIRMED and is hereby ADOPTED. Defendant, Bank of America Corporation, shall pay Plaintiff, Sydney Gary Peacock, Jr., the sum of $44,251.50 for legal fees and expenses incurred as of June 8, 2000.

It is further **ORDERED** that Defendant, Bank of America Corporation, shall, until further notice of this Court, pay to Plaintiff, Sydney Gary Peacock, Jr., on a quarterly basis, all reasonable legal fees and expenses relating to this litigation within twenty (20) days of presentment. Should Defendant dispute the reasonableness of the fees or expenses requested, it may file an objection thereto within the twenty-day period, in which event the Court will conduct an evidentiary hearing to resolve the matter.

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

This cause came on for consideration at hearing on October 5, 2000 on the following motion:

> **MOTION:** **PLAINTIFF'S, RE-NEWED MOTION FOR INTERIM STANDING ORDER FOR ATTORNEYS' FEES AND COSTS (Doc. No. 51)**
> **FILED: August 21, 2000**
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED.**

## I. *BACKGROUND*

In May 1986, plaintiff Sidney Gary Peacock, Jr. was employed by Barnett Banks, Inc., ("Barnett"). On July 7, 1997, Peacock and Barnett entered into an employment agreement commonly referred to as a "golden parachute," which sets forth the benefits payable to Peacock in the event he is terminated due to a "change in control" as defined in the agreement. A few months later, Barnett merged into NB Holdings Corporation, and Peacock became an employee of NationsBank Corporation. Thereafter, NationsBank merged with BankAmerica, and Bank of America was the resulting entity. During the period of mergers, Peacock worked for the changing entities as a Regional Executive.

Peacock alleges that in February 1999 he was "terminated ... from his position as Regional executive" and offered a temporary position as a Project Manager. Docket No. 2, Complaint at ¶ 19. According to Peacock, the termination of his employment triggered his rights to all termination benefits under the Plans and to certain rights under his employment agreement.

On or about September 17, 1999, Peacock filed suit in the Ninth Judicial Circuit, Orange County, Florida for breach of his employment agreement. The case was removed to this Court on December 14, 2000. On January 10, 2000, Peacock filed an amended complaint against his former employer and others alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.,* ("ERISA") and alleging state law claims for breach of contract.

On February 29, 2000, Peacock moved, pursuant to Paragraph 10 of his July 1, 1997 employment agreement, for an Interim Standing Order for Attorneys' Fees and Costs. Docket No. 20. Paragraph 10 states:

> The Company is aware that upon the occurrence of a Potential Change in Control or Change in Control, the Board of Directors or a stockholder of the Company may then cause or attempt to cause the Company to refuse to comply with its obligations under this Agreement, or may cause or attempt to cause the Company to institute, or may institute litigation seeking to have this Agreement declared unenforceable, or may take, or attempt to take, other action to deny the Executive [Peacock] the benefits intended under this Agreement. In these circumstances, the purpose of this Agreement could be frustrated. It is the intent of the parties that the Executive [Peacock] not be required to incur the legal fees and expenses associated with the protection or enforcement of his rights under this Agreement by litigation or other legal action because such costs would substantially detract from the benefits intended to be extended to the Executive [Peacock] hereunder, nor be bound to negotiate any settlement of his rights hereunder under threat of incurring such costs. Accordingly, if at any time after the Effective

Date, it should appear to the Executive [Peacock] that the Company is or has acted contrary to or is failing or has failed to comply with any of its obligations under this Agreement for the reason that it regards this Agreement to be void or unenforceable or for any other mason, or that the Company has purported to terminate his employment for cause or is in the course of doing so in either case contrary to this Agreement, or in the event that the Company or any other person takes any action to declare this Agreement void or unenforceable, or institutes any litigation or other legal action designed to deny, diminish or to recover from the Executive [Peacock] the benefits provided or intended to be provided to him hereunder, and the Executive [Peacock] has acted in good faith to perform his obligations under this Agreement, the Company irrevocably authorizes the Executive [Peacock] from time to time to retain counsel of his choice at the expense of the Company to represent him in connection with the protection and enforcement of his rights hereunder, including without limitation representation in connection with termination of his employment contrary to this Agreement or with the initiation or defense of any litigation or other legal action whether by or against the Executive [Peacock] or the Company or any director, officer, stockholder or other person affiliated with the Company, in any jurisdiction. The reasonable fees and expenses of counsel selected from time to time by the Executive [Peacock] as herein above provided shall be paid or reimbursed to the Executive [Peacock] by the Company on a regular, periodic basis upon presentation by the Executive [Peacock] of a statement or statements prepared by such counsel in accordance with its customary practices. . . .

Docket No. 51, Exhibit D, at ¶ 10.

Peacock argued that Paragraph 10 required defendants to fund Peacock's ongoing litigation efforts. Defendants argued that such an interpretation encouraged frivolous litigation and therefore was void as against public policy. By order dated May 23, 2000, this Court rejected defendants' public policy argument and agreed with Peacock's interpretation of the agreement. Docket No. 40 at 14. However, the Court found that an interim standing order on fees was not appropriate until: 1.) Peacock tendered his legal bills for payment, and 2.) a determination was made as to which defendants may be liable for fees under Paragraph 10. Docket No. 40 at 14–15.

On August 21, 2000, Peacock filed his renewed motion for interim standing order for attorneys' fees and costs. Docket No. 15. In his renewed motion and during the October 5, 2000 hearing, Peacock demonstrated that he had complied with this Court's two requirements. First, Peacock tendered his legal bills for payment to defendants on June 8, 2000. Second, Peacock identified Bank of America as the entity responsible for honoring any judgment, including payment of attorneys' fees, in this case.

Defendant Bank of America filed a memorandum in opposition, again claiming that payment of ongoing attorneys' fees and costs under Paragraph 10 encourages frivolous litigation and is therefore void as against public policy. Bank of America primarily relies on a court's recent ruling rejecting the interim fee applications under Paragraph 10 in related litigation. Specifically, Bank of America contends that the Honorable Ralph W. Nimmons, Jr. of the United States District Court, Middle District of Florida, Jacksonville Division, has reviewed the same agreement in litigation initiated by other former bank employees and held that Paragraph 10 is void as against public policy.[1] *See* Docket No. 57, Exhibit A: *Veniard v. NB Holdings Corporation,* Case No. 3:98–cv–446–J–21A (M.D.Fla. August 9, 2000). Bank of America does not dispute that it is the

---

1. This Court has enormous respect for the opinion of Judge Nimmons.

entity responsible for honoring any judgments, including the payment of attorneys' fees and costs, in this case.

## II. *THE AMOUNT OF AN ATTORNEY'S FEE AWARD*

### A. The Lodestar Approach

■ Historically, the federal courts have analyzed demands for attorney's fees pursuant to *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). *Johnson* set forth twelve factors to be considered in calculating a fee award.[2] The United States Court of Appeals for the Eleventh Circuit has consistently refined calculation of awards of attorney's fees to comport with decisions of the United States Supreme Court. *Norman v. Housing Authority,* 836 F.2d 1292, 1299 (11th Cir.1988). *Norman* adopted the lodestar approach for calculating attorney's fees. The lodestar approach presumptively incorporates the twelve factors adopted in *Johnson,* 488 F.2d 714. *Norman,* 836 F.2d at 1298–99. The Eleventh Circuit applies the lodestar approach of *Norman* in determining a reasonable attorney's fee. *See Camden I Condominium Assoc., Inc. v. Dunkle,* 946 F.2d 768, 772 (11th Cir.1991); *see also Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). Simply stated, the lodestar is the product of the number of reasonable hours expended and the reasonable hourly rate. *Burlington v. Dague,* 505 U.S. 557, 559–60, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

■ The lodestar approach also governs the attorney's fees analysis under fee-shifting statutes. *City of Burlington v. Dague,* 505 U.S. 557, 561–62, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (lodestar figure has become the guiding light of our fee-shifting jurisprudence). This Court therefore applies the *Norman* lodestar approach in determining the parties' request for attorney's fees.

### 1. Reasonable Hourly Rate

■ The Court must first determine the reasonable hourly rate. *Duckworth v. Whisenant,* 97 F.3d 1393 (11th Cir.1996); *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir.1994); *Norman v. Housing Authority,* 836 F.2d 1292,1299 (11th Cir.1988). The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services provided by lawyers of reasonably comparable skills, experience, and reputation. *Norman,* 836 F.2d at 1299. The party seeking attorney's fees bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates," which normally requires "more than the affidavit of the attorney performing the work." *Loranger,* 10 F.3d at 781, citing *Norman,* 836 F.2d at 1299. The court may consider direct evidence of rates for similar services or opinion evidence about rates. *Norman,* 836 F.2d at 1299.

■ The Eleventh Circuit looks to skill as the ultimate determinate of compensation level because experience and reputation are a mirror image of skill. *Norman,* 836 F.2d at 1300. Skill is evidenced by an attorney's initial case assessment, continuing negotiation and settlement attempts, persuasiveness, and other fundamental aspects of organization and efficiency. *Norman,* 836 F.2d at 1300 – 1301. Organization means that counsel plans effective discovery devices and does not use them randomly or for the mere

---

**2.** Those twelve factors are: (1) the time and labor required; (2) The novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

purpose of going through established routines. Efficiency means doing exactly what needs to be done in a minimum time. *Norman*, 836 F.2d at 1301. Legal skill, therefore, correlates to a knowledge of both trial practice and substantive law. *Norman*, 836 F.2d at 1301. Although an attorney who must familiarize himself or herself with either aspect of practice may prove exemplary as an advocate, he or she does not have a right to claim comparable skill to attorneys whose first actions are directed at the finer points of the case. *Norman*, 836 F.2d at 1301. Proficiency should yield efficiency, and the district court has ample discretion to discount the import of counsel's expertise. *Varner v. Century Finance Company, Inc.*, 738 F.2d 1143, 1149 (11th Cir.1984). No two attorneys possess the same skill, therefore the Court must look to the range provided by the evidence, and interpolate a reasonable market rate. *Norman*, 836 F.2d at 1300. In summary, the Court determines a reasonable rate by assessing the range of fees established in the marketplace, as modified by reference to an individual attorney's skill. *Norman*, 836 F.2d at 1301; *e.g., Duckworth*, 97 F.3d at 1396.

### 2. Reasonable Hours Expended

The second step in determining the lodestar is to assess the reasonable number of hours expended in the litigation. *Norman*, 836 F.2d at 1302. Inquiry into the reasonable number of hours focuses on the exercise of "billing judgment"—exclusion of those hours not reasonably billable to a client irrespective of counsel's skill, therefore the Court must deduct for redundant hours. *Norman*, 836 F.2d at 1301–02, citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A court must not consider an attorney's skill at this stage as this would constitute a double penalty—the rate would first be decreased and the hours would then be lowered. *Norman*, 836 F.2d at 1301.

The fee applicant bears the burden of documenting the appropriate number of hours. *Norman*, 836 F.2d at 1303, citing *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933; *United States v. Blue Cross and Blue Shield of Florida Inc.*, 882 F.Supp. 166, 170 (M.D.Fla.1995). Generalized statements concerning reasonableness are of little or no assistance to the Court, instead proof of the hours dedicated to litigation and any corresponding objections must be made with sufficient specificity. *Duckworth*, 97 F.3d at 1397–98; *Norman*, 836 F.2d at 1301. Throughout the calculation of the lodestar, the Court remains cognizant that it is itself an expert on the question, and may consider the request in light of its own knowledge and experience with or without the aid of witnesses as to value or hours dedicated to litigation. *Loranger*, 10 F.3d at 781; *Norman*, 836 F.2d at 1303.

### B. Adjustment of the Lodestar

At its discretion, the Court may adjust the lodestar in light of the results obtained. *See Duckworth*, 97 F.3d at 1399; *Norman*, 836 F.2d at 1302. Adjustments may be based upon partial or limited success or exceptional results. *See Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933. Yet, even if the results were exceptional, no enhancement is permissible unless there is specific evidence establishing that the quality of representation was superior to that which could be reasonably expected in light of the rates claimed because the rate claimed should reflect the attorney's skill. *See Norman*, 836 F.2d at 1302.

### III. APPLICATION

#### A. Entitlement to Interim Order

By its terms, Paragraph 10 is unambiguous.[3] Paragraph 10 provides that if Peacock's employer fails to honor the terms of the employment agreement after

---

**3.** At the October 5,2000 hearing, Bank of America acknowledged that Paragraph 10

was not ambiguous.

the change in control, Peacock may retain legal counsel to enforce that agreement. Bank of America is to reimburse Peacock for his legal expenses, and hold him harmless. Relying on Judge Nimmons' decision, Bank of America argues that the agreement to reimburse Peacock for his ongoing legal expenses encourages frivolous litigation, and is therefore void as against public policy. This Court has already considered and rejected Bank of America's public policy argument. *See* Docket No. 40 at 14. Having reconsidered Bank of America's public policy argument in light of Judge Nimmons decision, this Court is convinced that an interim order is now appropriate.

Paragraph 10 expresses the intent of the parties as the result of arms-length bargaining. The parties had equal bargaining power. Barnett wished to recruit and retain key executives during and following a change in control. Barnett further intended to override the natural hesitancy of new and existing bank executives to commit to stay with Barnett in light of the possibility that the successor bank may fail to honor the terms of the employment agreement In exchange for Peacock's renewed commitment, Barnett acknowledged that Peacock must have the practical means to enforce the terms of the employment agreement. To provide Peacock with this security, Barnett elected to commit to pay Peacock legal expenses incurred in enforcing the employment agreement. Both Peacock and Barnett were able to protect their respective interests.

This Court will not inquire into the wisdom of the actions taken by these sophisticated parties in the absence of fraud, bad faith or an unreasonable exercise of discretion. The subject of holding Peacock harmless regarding ongoing *reasonable* legal fees and expenses was specifically negotiated and anticipated in Paragraph 10. The provision will be enforced. Unreasonable fees, including fees relating to the pursuit of frivolous claims, are not compensable under Paragraph 10.[4]

### B. Amount of Fees and Costs

█ Peacock's motion at Docket No. 51 seeks to recover $44,251.25 in attorneys' fees and costs incurred, billed, and presented for payment on June 9, 2000.[5] Docket No. 51, attached Exhibit B. This total includes 179.75 attorney hours at rates ranging from $125 to $265 per hour, and 1.5 paralegal hours at $50 per hour. *Id.* In addition, Peacock incurred $667.50 in expenses.

Having presided over a lengthy hearing on Peacock's renewed motion for fees and expenses, and based on the evidence introduced, this Court concludes that Peacock's claims are not so lacking in arguable merit as to be considered frivolous, unreasonable, and without foundation. This Court further finds that Paragraph 10 anticipated an award of fees relating to the enforcement of the obligations under the employ-

---

4. Peacock's suit is not frivolous. Judge Nimmons was concerned that Paragraph 10 may encourage frivolous litigation by requiring a defendant to fund a plaintiff's litigation even where the litigation is frivolous. However, Paragraph 10 requires payment of only "reasonable" legal fees. Legal fees relating to the pursuit of frivolous claims are unreasonable and, therefore, are not compensable under Paragraph 10.

5. On August 24, 2000, this Court's issued an Order and Notice of Hearing, requiring the panics to meet in an attempt to resolve all issues concerning Peacock's request for attorneys' fees prior to the October 5, 2000 scheduled hearing date. Docket No. 52. Nonethe-

less, during the October 5 hearing. Bank of America claimed that it was unprepared to contest the reasonableness of the amount of fees presented for payment by Peacock. Bank of America has known since May 24, 2000 that Paragraph 10 was found to be valid and enforceable by this Court. *See* Docket No. 40, Judge Fawsett's May 24, 2000 Order. Peacock presented his fees for payment on June 8, 2000, and filed his renewed motion requesting $44,251.25 in legal fees and expenses on August 21, 2000. Because Bank of America had ample opportunity to challenge the reasonableness of Peacock's fees, Bank of America was denied an extension of time and ordered to present its challenges to the fees at the October 5 hearing—which it did.

ment agreement, including the payment of benefits under the benefit plans and program covered by ERISA. *See* Docket No. 51 at Exhibit D, ¶ 7. Thus, contrary to Bank of America's assertion, payment of legal fees and expenses relating to ERISA claims was clearly anticipated by Paragraph 10.

Moreover, this Court is well aware of the range of reasonable hourly rates prevailing in the relevant legal community— the Orlando Division—for similar services provided by lawyers of reasonably comparable skills and experience. This Court finds that the aforementioned billing rates are reasonable based on defense counsel's high degree of skill as reflected during the October 4, 2000 hearing and from a review of the record. These rates fall within the permissible range of fees in the Orlando Division.

Having considered Peacock's counsel's billing statement and counsel's testimony, this Court finds that there is no evidence of duplicative billing among Peacock's attorneys. Rather, the record evidence shows Peacock's counsel's diligent efforts to divide the work in such a fashion as to minimize legal fees and the possibility of duplicative billing. In pursuing this ERISA and breach of contract case, and focusing on the exercise of "billing judgment," a total of 179.75 attorney hours and 1.50 paralegal hours falls well within the reasonable number of hours necessary to successfully investigate, initiate, and defend this case through June 8, 2000—the date fees were presented for payment. Thus, this Court finds that the time periods itemized for the $44,251.25 breakdown are reasonable, Docket No. 51, Exhibit B.

The lodestar in this case is the product of the number of reasonable hours expended and the reasonable hourly rates. This figure equals $43,593.75 for attorneys' fees, plus $667.50 for costs, totaling $44,251.25.

## IV. *CONCLUSION*

For the foregoing reasons, it is **RECOMMENDED** that plaintiff Sidney Gary Peacock, Jr.'s renewed motion for interim standing order for attorneys' fees and costs [Docket No. 51] be **GRANTED.** It is

**FURTHER RECOMMENDED** that this Court issue an Interim Standing Order for Attorneys' Fees and Costs requiring Bank of America to pay plaintiff Sidney Gary Peacock, Jr. all reasonable legal fees and expenses relating to this litigation within twenty days of presentment. It is

**FURTHER RECOMMENDED** that Bank of America pay plaintiff Sidney Gary Peacock, Jr. $44,251.50 for legal fees and expenses presented for payment on June 8, 2000.

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal. Any party filing an objection to this ruling shall also file and serve a copy of the transcript of the October 5, 2000 hearing on the same day.

Dated: Nov. 17, 2000.